LAURA L. OWENS, EXECUTRIX, ET AL. *v.* ESTATE OF SILAS
OWENS, DECEASED.

1. EXECUTORS.  *Accounting.  Representative of deceased executor.  New party.*

   Where a suit is begun by a distributee of an estate to compel an accounting by a surviving executor it is proper, on application of the survivor, to make the personal representative of the deceased executor a party to the proceeding.

2. SAME.  *Depositions.  New party.*

   In such case depositions taken before the representative of the deceased executor was made a party are admissible.

3. SAME.  *Appeal.  Questions reviewable.*

   In such case, upon appeal, the supreme court will not review matters which the court below expressly declined to pass upon, reserving the same for decision on fuller proof, nor will an assignment of error be considered which seeks to review the action of the court below holding an executor chargeable with a bond where after the appeal was taken the bond was accounted for by the executor.

4. SAME.  *Executors charged with interest.*

   Where executors collected money belonging to the estate, and rendered no accounts for more than two years, deposited the money in their own bank credited to them as guardians of the distributees, when they were not guardians, and the money so remained in the bank for ten years, the bank in the meantime loaning money to the distributees at interest and selling property to them, taking interest-bearing notes therefor, they are chargeable with interest at the legal rate during the time the money was in the bank.

5. SAME.

   Where executors, without excuse, left a sum due the estate in the hands of the debtor for nearly fifteen years, not collecting it till compelled to do so in a proceeding for an accounting, they were chargeable with interest on the amount.

84 Miss.—43

6. **SAME.** *Commissions. Donation. Return to estate.*

> Where it appeared that an executor intended to return his commissions to the estate, it was improper to treat such intention as a donation to a part of the distributees, as each of the distributees was entitled to share therein.

FROM the chancery court of Lafayette county.

HON. JAMES C. LONGSTREET, Chancellor.

Silas Owens died in 1889, leaving a will. He left an estate of about $100,000. In his will he devised and bequeathed all his property except $5,000, which he bequeathed to the lady he afterwards married, to his four children. At the time of the execution of this will he was a widower, but afterwards married, and had two more children by this last marriage. He appointed A. T. Owens and Bem Price executors of his will. The will provided that, when any of said children should marry or become of age, their share of the estate should be paid over to them. The will was probated and the executors qualified. The executors proceeded with the execution of the trust, and filed their first annual account at the May, 1892, term of the chancery court, which was approved. At that time $80,500 was distributed, and the court, on the application of Bem Price, allowed the executors commissions at five per cent on that amount. When A. T. Owens learned this, he at once got an attorney to get the amount of the commissions reduced to four per cent, and declined to receive any commissions at all, but Price was paid his half of the commissions so allowed. After the death of Silas Owens, his widow renounced the will, and took as one of the distributees, under the law. After the first account filed, A. T. Owens had very little to do with the management of the estate, and he died in May, 1897, and his widow, Mrs. Laura L. Owens, was made his executrix. Silas Owens had also an estate in North Carolina, and Bem Price took out letters of administration c. t. a. in that state, and received from that source $20,346.75. In October, 1900, Mrs. Erma Nicholson, one of the daughters and heirs of Silas Owens, filed her

petition in the chancery court of Lafayette county, asking that
Bem Price, the surviving executor, be required to render a final
account.    Price filed his final account.    To this final ac-
count the heirs of Silas Owens filed a number of exceptions,
and the depositions of several witnesses were taken.    Price
then took steps to bring in the representatives of A. T. Owens,
deceased executor, in order that they might be held partly
responsible in the event the decree should be in favor of
parties excepting to his final account, and the said representa-
tives were brought in after the depositions had been taken.    The
exceptions to the final account urged by the heirs of Silas Owens
are as follows:  (1)  They urge the court to charge against the
executors the par value of $5,000, and the interest thereon, of
stock held by Silas Owens at the time of his death, in the Bank
of Greenville, which the executors had allowed to perish through
the insolvency of that bank.  (2)  The executors should be
charged with $500 and interest, being the value of one Bedford
Alum & Iron Company bond owned by Silas Owens, and lost by
the· neglect of the executors.  (3)  The executors should be
charged with interest on moneys received by them on account of
Silas Owens' estate, and held for many years without any reason
therefor.  (4)  The executors should be charged· with certain
rents on a tract of land known as the "Wiley Hood Place,"
because of their gross negligence in not realizing the rents.  (5)
The executors should be charged with interest on the money in
the hands of Latham, Alexander & Co., which was permitted to
remain uncollected for fifteen years.  (6)  The court should re-
fuse to allow commissions to the executors, and it should require
Price and the estate of A. T. Owens to be charged back with
commissions already received, because of the gross neglect of
duty and the improper allowance of the commissions.  (7)  The
court should refuse to allow any attorney's fees, as the services
of attorneys were required by Price's neglect and for his per-
sonal defense, and not to protect the interest of the estate.    The
cause was heard on considerable testimony, and a final decree

was rendered to the effect that the par value of the Greenville stock and the interest thereon should be charged against the executors and the value of the Alum & Iron bond. The other objections were overruled. From that decree the surviving executor appealed. The heirs of Silas Owens prosecute a cross appeal, and Mrs. Laura L. Owens, executrix of the estate of A. T. Owens, also appeals. The opinion of the court contains a statement of such other facts as are necessary for an understanding of the case.

*C. L. Sivley, Stone & Wilson,* and *Holmes & Holmes,* for appellants.

The two assignments of error relied on are that the court erred in charging the executors with the bank stock and with interest thereon. Executors are not held to the same degree of care where the investment was made by the testator as if made by themselves, unless they are required by law to change the securities made by the testator. In this state there is no such law. In such case they are not liable for loss, except where they act in bad faith or in an unreasonable manner. *Hogan* v. *De Peyster,* 20 Barb., 115. All that is required is ordinary care. *Williams, Adm'r,* v. *Campbell,* 46 Miss., 61; *Coffin* v. *Bramlitt,* 42 Miss., 208 (97 Am. Dec., 449); *Harvard College* v. *Amory,* 9 Pick., 446; *Brown* v. *French,* 125 Mass., 410 (28 Am. Rep., 254); *Torrence* v. *Davidson,* 92 N. C., 441 (53 Am. Rep., 419); *Eyster's Appeal,* 16 Pa., 372; Woerner's Am. Law of Administration, vol. 2, p. 708; *Thompson* v. *Brown,* 5 Johns. Ch., 619. Not held responsible for losses occasioned by mere error of judgment. *Cooper* v. *Cooper's Ex'r,* 77 Va., 198; *Corrington* v. *Corrington,* 15 Ill. App., 393. Where he has acted with what men of sense and experience would deem reasonable discretion in their own affairs, especially during a period of doubts and difficulties, he will not be held for losses arising in consequence of his acts in good faith. *Perry* v. *Smoot,* 23 Grat., 241; *Pope* v. *Mathews,* 18 S. C., 444; Woerner's Am. Law of Administration,

p. 10; *Bowker* v. *Pierce,* 130 Mass., 262; *Marsden* v. *Kent,* L. R. 5 Ch. D., 598. If the testator has given no directions in the will, the ordinary rules of prudence and diligence apply, and the fact that he has invested his property in particular stocks, shares of corporations, mortgages, or other securities, will go far to justify his executors in continuing them. *Harvard* v. *Amory, supra; Parker* v. *Glover,* 42 N. J. Eq., 559 (9 Atl., 217); *In re Weston's Estate,* 91 N. Y., 502; *Marsden* v. *Kent, supra.*

It is not enough to say that, in the light of subsequent developments, better judgment would have dictated differently. *Bowker* v. *Pierce,* 130 Mass., 262; *Pearson* v. *Gillenwaters* (Tenn. Sup.), 42 S. W., 9; *Foscue* v. *Lyon,* 55 Ala., 452.

These executors were, it is very evident, in doubt as to whether the stock was in peril of being lost. They evidently believed they could solve this doubt by waiting, with safety, and in this they were mistaken. They had a right to wait and to take advice, and they delayed a little too long without knowing it. They are not responsible. 2 Woerner's Am. Law of Administration, 710; *Matter of Gray,* 27 Hun., 455; *In re Weston's Estate,* 91 N. Y., 502; *Troup* v. *Rice,* 55 Miss., 278.

Under Code 1880, §§ 2032 and 2038, they only had a right to sell perishable property. This stock was neither perishable property nor property needed to pay debts, and an order of court was necessary, and this would require two weeks' notice. The sale would perhaps not have been void without this notice, but the purchasers would have required it, and the trustees needed the notice to protect themselves. *Baines* v. *McGee,* 1 Smed. & M., 208 (1); *Joslin* v. *Caughlin,* 26 Miss.; 134; *Hutchins* v. *Brooks,* 31 Miss., 430; *Bland* v. *Muncaster,* 24 Miss., 62 (57 Am. Dec., 162); *Smith* v. *Chew,* 35 Miss., 153.

In the court below cross-appellants laid great stress on the fact that Price was a director in the Bank of Greenville. An individual director is not, by virtue of his office, charged with knowledge of what appears on the books, and is not, as matter

of law, conclusively presumed to know the general business of the corporation. Thompson on Corporations, vol. 4, sec. 4607; *Bank* v. *Drake,* 29 Kan., 311 (44 Am. St. Rep., 646); Cyc. Law & Proc., vol. 10, p. 826, sec. 10; *Rudd* v. *Robinson,* 126 N. Y., 500 (26 N. E., 1046; 12 L. R. A., 473; 22 Am. St. Rep., 816); *Briggs* v. *Spaulding,* 141 U. S., 132 (11 Sup. Ct., 924; 35 L. ed., 662).

Even if they should have been charged with this stock, they should not have been charged with interest on it. 1 Perry on Trusts, sec. 466; *Losen* v. *Copland,* 2 Bro. Ch., 157.

*Kimbrough & Kimbrough,* for appellees.

The executors are plaintiffs, and must prove the facts that relieve them from liability. *Cole* v. *Leake,* 27 Miss., 767; *Gray* v. *Harris,* 43 Miss., 427; *Tell City Furniture Co.* v. *Stiles,* 60 Miss., 857; *Morgan* v. *Stone,* 65 Miss., 250 (3 South., 580). The executors stand charged with entire estate as inventoried, and must show a legal administration to relieve them from liability. *Bohannon* v. *Madison,* 31 Miss., 350; *Moffatt* v. *Loughridge,* 51 Miss., 214.

Executors may sell perishable property without order. Code 1892, § 1888. The court or clerk may order the sale. Sec. 1885. Depreciated bank notes are perishable property. It was the executor's duty to convert them into something less perishable. *Bailey* v. *Dilworth,* 10 Smed. & M., 410 (48 Am. Dec., 760). This rule has not been modified. *Bailey* v. *Dilworth,* 10 Smed. & M., 409 (48 Am. Dec., 760); *Bohannon* v. *Madison,* 31 Miss., 348; *Booyer* v. *Hodges,* 45 Miss., 78. Power to distribute implies power to sell. 2 Lawson's Rights, Remedies & Practice, secs. 922, 929, 935. They may sell and distribute personal property, and are responsible for loss from delay. 3 Waite, Act. & Def., p. 244, sec. 10; Jarman on Wills. If the bank stock is not perishable, the chancellor could have made an order in vacation. Code 1892, § 1886. But this was not an ordinary executor, but a trustee or guardian as well, and as

such took the absolute legal title, and could convey any part of it. Pom. Eq., secs. 1011, 1012; *Hale* v. *Hale* (Ill.), 33 N. E., 858 (20 L. R. A., 247); *Jones* v. *Railroad Co.* (Mass.), 23 N. E., 43 (5 L. R. A., 538). One executor may lease or dispose of the estate without the other. *Boudereau* v. *Montgomery*, Fed. Cas., No. 1694. Executor may be allowed loss on sale of stock, though sale was made without order of court. *Ex parte Jones*, Fed. Cas., No. 7443. Executor has legal title to choses in action, and, in absence of fraud, may dispose of them as if owner (*Butler* v. *Gazzam*, 81 Ala., 491 [1 South., 16]), and may make private sale in small lots when sale in large lots might depress market (Succession of Kaiser [La.], 20 South., 184).

Executor must use utmost good faith and such diligence as a prudent man exercises in his own affairs. *Boggan* v. *Walter*, 12 Smed. & M., 668; *Bailey* v. *Dilworth*, 10 Smed. & M., 404 (48 Am. Dec., 760); *Bohannon* v. *Madison*, 31 Miss., 348; *Conwill* v. *Livingston*, 61 Miss., 648. If property is lost, executor must show he used due care. *Boggan* v. *Walter*, 12 Smed. & M., 666; *Bailey* v. *Dilworth*, 10 Smed. & M., 409. An executor is not relieved by showing that the bank became insolvent. *Morgan* v. *Stone*, 65 Miss., 250 (3 South., 580); *Banks* v. *Machen*, 40 Miss., 260. To get credit must show that it was lost without his fault. Code 1892, § 1956; *Moffatt* v. *Loughridge*, 51 Miss., 214; Am. & Eng. Ency. Law (2d ed.), vol. 12, p. 887; *Cooper* v. *Williams* (Ind. Sup.), 9 N. E., 917. Must exercise sound discretion. Perry on Trusts, secs. 439, 441. When resort to court would delay, must act as owner. Perry on Trusts, sec. 476.

They are chargeable with interest "when it remains dead in their hands." *Anderson* v. *Gregg*, 44 Miss., 182 (11 Am. & Eng. Ency. Law [2d ed.], p. 1218, note 2, and p. 1220); *Banks* v. *Machen*, 40 Miss., 257; *Cason* v. *Cason*, 31 Miss., 579; *Brandon* v. *Hoggatt*, 32 Miss., 335, 340.

As to the rate of interest: Ordinarily, as to adults, 6 per cent compound interest is the most that could be charged; but

in this case 10 per cent is the actual damage done to the adults, and there is another reason that requires that 10 per cent be charged. The executors mingled these funds, or, rather, deposited them in a bank absolutely owned by these two executors, to the extent of not less than one-fourth of the whole of it at any time during the entire administration. *Powell* v. *Cooper,* 42 Miss., 226. The slightest gain out of the assets subject to his control when it cannot be traced, subjects him to interest on the whole. *Anderson* v. *Gregg,* 44 Miss., 182; *Allen* v. *Gillette,* 8 Sup. Ct., 1331 (32 L. ed., 278).

Executor depositing funds in a bank of which he is an officer or owner is liable for interest on that account. *In re Babcock* (Sur.), 9 N. Y. Supp., 554; *In re Mairs,* 4 Redf. Sur. (N. Y.), 160; *Clock* v. *Chadeagne,* 10 Hun. (N. Y.), 97; *Cannon* v. *Apperson,* 14 Lea (Tenn.), 553; *Johnson* v. *Holifield,* 82 Ala., 123 (2 South., 753). Where the executor is liable for a debt lost, he is chargeable with interest on it from the time he should have collected it. *Banks* v. *Machen,* 40 Miss., 256.

The will made these executors guardians. They understood they were such and sold real estate and bank stock as guardians. A testamentary guardian who accepts is liable to account, though he did not qualify. *Gregory* v. *Field,* 63 Miss., 323.

The surviving executor is liable for the whole. *Fonte* v. *Horton,* 36 Miss., 355, 375; *Boggan* v. *Walter,* 12 Smed. & M., 273; *Clark* v. *Clark,* 8 Paige, 152 (35 Am. Dec., 676); *Edmonds* v. *Crenshaw,* 14 Pet., 165 (10 L. ed., 402).

*Edward Mayes,* on the same side.

There was gross negligence as to stock in the Greenville bank belonging to Silas Owens' estate. The legal principles which control this branch of the case are well settled. *King* v. *Talbot,* 40 N. Y., 76-84; *Bailey* v. *Dilworth,* 10 Smed. & M., 404 (48 Am. Dec., 760); *Boggan* v. *Walter,* 12 Smed. & M., 666. The law will not tolerate or condone this sort of treatment by executors. *Mills* v. *Hoffman,* 26 Hun., 594 (11 Am. & Eng. Ency. Law, 997, 965, 967, 904).

It would be intolerable that these trustees should be allowed to postpone the interests of their estates to their own interests. *Brazier* v. *Clark,* 5 Pick., 96; *Boyd's Ex'rs* v. *Boyd's Heirs,* 3 Grat., 113.

The Greenville bank stock was inventoried at $5,000. It was perishable property. This particular term had been applied to a similar property. *Bailey* v. *Dilworth,* 10 Smed. & M., 404 (48 Am. Dec., 760). See, also, *Webster* v. *Pick,* 31 Conn., 495; *Middleton* v. *R. R. Co.,* 26 N. J. Eq., 269; *Millard's Adm'rs* v. *Hall,* 24 Ala., 209; *Fisk* v. *Spring,* 25 Hun., 367.

Independent of the statutory provisions and the general principles of law of executors, it was their duty to act in emergencies, and to give the estate the full benefit of their power and influence. Perry on Trusts, secs. 476, 427; *Phillips* v. *Phillips,* Freeman, Ch. (Eng.), 11 (11 Am. & Eng. Ency. Law, p. 965).

There was no error in charging them with interest on this stock. *Banks* v. *Machen,* 40 Miss., 256; *Crowder* v. *Shackleford,* 35 Miss., 321; *Cole* v. *Leake,* 27 Miss., 767; *Lowry* v. *McGee,* 3 Head (Tenn.), 270; *Miller* v. *Lux,* 100 Cal., 609 (34 Pac., 637; 11 Am. & Eng. Ency. Law, pp. 1224, 1230).

The most important point raised on the cross-appeal by the heirs of Silas Owens is to the effect that the court erred in refusing to charge the executors, especially Price, with interest on the balance of money in their hands, unnecessarily and unlawfully retained by them and used in the bank in which they were interested. As to the two accounts of the Mississippi administration and the North Carolina administration, the executors should have been charged 10 per cent interest on the average amounts on hand during the average period from September, 1890, to the day of final settlement. *Bass* v. *Chambliss,* 9 La. Ann., 376; *In re Hilliard,* 83 Cal., 423 (23 Pac., 393; 11 Am. & Eng. Ency. Law, pp. 1212, 1219, 1231); *Grant* v. *Spann,* 33 Miss., 134.

They are estopped to assert now that they were guardians, and liable to be held accountable as such. *Bibb* v. *McKinley,* 9 Port., 636; *Aldrich* v. *Willis,* 55 Cal., 81; *Davis* v. *Harkness,* 1 Gilman (Ill.), 173 (41 Am. Dec., 184); *Breeding* v. *Shinn,* 8 Ind., 125; *Patrick* v. *Woods,* 1 Bibb (Ky.), 223; *Burch* v. *State,* 4 Gill & J., 444; *Chaney* v. *Smallwood,* 1 Gill, 367; *Parmentier* v. *Phillips,* 4 N. C., 294; *Martin's Adm'r* v. *Fielder,* 82 Va., 455 (4 S. E., 602); *Bryan* v. *Walton,* 14 Ga., 185; *Hines* v. *Mullins,* 25 Ga., 696; *Portis* v. *Cummings,* 21 Tex., 265.

Argued orally by *J. C. Wilson,* for appellants, and by *B. F. Kimbrough,* for appellees.

WHITFIELD, C. J., delivered the opinion of the court.

We have given this case, in all its details, the most thorough and painstaking consideration. The principles which must control it are not new. They are well considered and have been long established. We shall refer to no authorities in the course of this opinion, for the reason that counsel on both sides have, in their briefs, collated the authorities applicable, in the most admirable manner; and we content ourselves with referring to those authorities, all of which we have carefully examined.

It is the facts of a case which make a case, and it is the testimony in this case which must bring into relief, clear and distinct, the conduct of these executors, as falling within or without the condemnation of the law. If we were to set out in detail the facts, the opinion would be unpardonable in its length, and would be a mere array of bits of testimony, making up the whole outline of the case. We shall announce the conclusions at which we have arrived with only such comments as may be necessary to make clear what we mean.

There are three appeals before us. The first we shall deal with is the appeal of Mrs. Laura L. Owens, executrix of A. T. Owens, deceased. Four errors are assigned; the first being

that the court erred in making Mrs. Owens, as executrix, a party to this proceeding, upon the petition of Price, surviving executor of Silas Owens. There was no error in this. It was eminently proper that the executrix should have been made a party for the purpose indicated in the decree below. Nor is there any error in the second assignment, which complains of the action of the court in allowing the depositions which had been taken in the case before Laura L. Owens, executrix, was made a party to be used. A. T. Owens was one of the executors. A. T. Owens was practically a party to the suit at all times, and no objection was made in the court below to the depositions. The fourth assignment of error is to the action of the court below in adjudging the estate of A. T. Owens liable for the Alum & Iron bond. This assignment is immaterial, since the executors have collected the full value of the bond and accounted for it since the appeal was taken from the decree below. The third assignment of error will be dealt with in connection with the assignment of error on the direct appeal. Coming to that appeal now, we find two assignments of error. It is assigned for error, first, on the direct appeal by the Memphis Trust Company, executor of the last will and testament of Bem Price, deceased, that the court below erred in charging the said Price and the said A. T. Owens with the par value of $5,000 of stock held by Silas Owens, Jr., in the Bank of Greenville, Miss.; secondly, the court below erred in charging the said executors with six per cent interest per annum on said sum of $5,000 from January 1, 1891, or with any interest whatever thereon before the entry of the decree below. It is enough to say that the testimony in this case makes it perfectly clear that the action of the court below in these respects was correct. We forbear detailed comment on the testimony. It follows that the decree on the direct appeal, and also the decree on the appeal of Mrs. Laura L. Owens, executrix, must be, and are hereby, affirmed.

The third appeal is that taken by the heirs of Silas Owens,

deceased, as cross-appellants. They filed eighteen exceptions to the final account of the executors in the court below. They file only seven assignments of error here. The action of the court below in respect to the second exception is not assigned as error. The third exception relates to the failure of the executors to dispose of a certain Alum & Iron bond; but this, as stated above, is immaterial, since the executors have accounted for the same since the decree in the court below. The seventh and eighth exceptions were withdrawn by the exceptants. The tenth and eleventh exceptions are very full, and specific protests against the allowance of commissions at four per cent on $80,500 alleged to have been improperly allowed, and also protests against the allowance of any other commissions on the final account. It is sufficient to say as to these exceptions, as well as to the fifth assignment of error, which protests against the allowance of any attorney's fees in this proceeding, that the court below, in its final decree, expressly declined to pass upon these three matters, reserving them for decision after fuller proof should have been made. We have before us, therefore, as to these three matters, no action of the chancellor to review. The thirteenth exception was withdrawn, and the action of the court below on the fourteenth, fifteenth, sixteenth, seventeenth, and eighteenth exceptions is not assigned here for error. This leaves for our consideration on this cross-appeal the action of the court below on the fourth, fifth, sixth, ninth, and twelfth exceptions, as also its action, challenged by the seventh assignment of error, in directing that the commissions allowed by the chancellor, which were received by A. T. Owens, and then refunded to the heirs, should be paid back to the estate of A. T. Owens. The cross-appellants have reduced their complaints to seven assignments of error, which are as follows: "(1) The court erred in failing to charge the executors with interest on moneys received by them for said estate, and held for many years, without any reason whatever, as shown by the proof, for not distributing same. (2) The court erred in failing to

charge said executors for reasonable additional rents on the Wiley Hood place, in Bolivar county, not realized only because of their gross negligence, as shown by the proof. (3) The court erred in failing to charge executors interest on money shown by their inventory to be with Latham, Alexander & Co., of New York—so in their personal knowledge—and which they permitted to remain there some fifteen years, and collected only after this proceeding against them was begun for settlement. (4) The court erred in not refusing commissions to executors, and in faling to charge Price with commissions already received, as same had been forfeited by gross neglect of duty, and was improperly allowed. (5) The court erred in not refusing the allowance of any attorney's fees for this proceeding, as the services of attorneys are required by Price's neglect, and for his personal defense, and not to protect any interest of the estate. (6) The court erred in the amount of its allowance for the Alum & Iron bond, and more has been collected on it than allowed, but only since the decree. (7) The court erred in directing in said final decree that the commissions allowed by Chancellor Trigg, which were received by A. T. Owens, and then refunded by him to the several heirs, should be paid back to the estate of A. T. Owens."

Taking up these in their order, we say that the first assignment is well taken. Silas Owens died in August, 1889, and these two executors qualified on the 20th of September, 1889. Price, one of the executors, took out letters of administration c. t. a. in North Carolina, and ultimately received from that source some $20,000. On the 6th of February, 1890, the executors filed their inventory of stocks, bonds, and notes, which aggregated $83,291.09. The executors proceeded with the management of the estate, but transacted very little of the business through the proper medium, the chancery court. Each year application would be made to the chancellor to allow a sum to be expended for the support of the children, and this was, in the main, everything that these executors did through the

chancery court. It is proper to say that Price had the almost
exclusive active management and control of this estate, A. T.
Owens having apparently left everything to his judgment and
management. Some minor orders were obtained at different
times, but substantially all that they asked the chancery court
for were orders authorizing the spending of yearly sums of
money for the support of the heirs. Although the will was
admitted to probate on the 20th of September, 1889, the first
annual account was not filed until the 21st of February, 1892,
and this was the only annual account that was ever filed. It
was not until Mrs. Nicholson, one of the daughters, who had
married in the meantime, filed her petition in the chancery
court, on the 26th of October, 1900, more than eleven years
after the will was probated, that any further account was ren-
dered to the court, and this account—the final account—was
thus rendered under compulsion, the prayer of that petition be-
ing that the court would compel Price, the surviving executor,
to then render his final account, A. T. Owens having died be-
fore the petition was filed; and it was as the result of this com-
pulsory process that the final account now before us was filed.
Supplements to this final account were filed afterwards.

It is important to remember in this connection that A. T.
Owens was president of the Bank of Oxford, and that Bem
Price was cashier and active manager, and that both were large
stockholders in the bank, and that Silas Owens during his life
was the largest stockholder in the bank. As soon as Price col-
lected the $20,000 from the North Carolina property, he
brought it to Oxford, and put it into the Bank of Oxford.
In the month of February, 1892, the executors filed their first
annual account, and then distributed amongst the heirs some
eighty odd thousand dollars, consisting chiefly of stocks, and
partly of cash on hand—that is to say, the money was repre-
sented as distributed, but in fact none was paid out to the minor
heirs, but it was still kept in the bank, where these executors
passed the money to the credit of themselves as guardians of

four of the minor children.  As to this money, clearly, there was simply a transferring from one account to another, the money remaining in the bank.  Learned counsel for cross-appellants have prepared, with great pains and accuracy, four statements showing exactly how the money of these cross-appellants was actually dealt with.  These statements are a statement of the Mississippi administration; a statement of the North Carolina administration; a statement of the guardians' account, so called; and, fourth, a statement of the aggregate result, showing the balance of money on hand at the expiration of each month, being the aggregate of all three funds.  It will thus be seen that the executors dealt with the money in a threefold way: First, money from the Mississippi administration; second, money from the North Carolina administration; and, third, money charged to themselves as testamentary guardians on the books of the bank.  It clearly appears from the record that commencing with the month of January, 1890, at the expiration of which month there was on hand the sum of $11,737, there was a continuous and progressive increase of balance on hand until February, 1892, when that balance reached the large sum of over $44,000.  The record further shows that, while in the month of February the distribution above referred to was made, still at the end of that month there was on hand in cash in the bank the sum of over $32,000; and from that day forward until the end of the month of May, 1898, there was always on hand an amount of cash ranging from about $26,000 to $36,000; and this, too, excluding all the stocks and bonds held by the executors or the heirs, and also excluding any sums of money loaned by the executors for the benefit of the heirs.  In fact, the executors never loaned any money for the benefit of the heirs, except two loans of $5,000 at one time, and $2,000 at another, to the Ables, and one loan of $700 made by them as guardians to Norfleet Owens.  Another thing of supreme significance in connection with this assignment of error is the fact that these very large sums of money were retained on hand

from January, 1890, in an estate which was absolutely free from debt, not more than about $100 having ever been paid by these executors on any debts due by Silas Owens at the time of his death. Another striking fact is that whilst these large sums of money were thus lying in bank and being used by the bank in its banking business, no distribution whatever was made until February, 1892, which was two and one-half years after the administration began; while during all this time these executors, as officers of this bank and stockholders therein, were lending money at ten per cent per annum for the bank to these adult distributees, and at the same time, as executors, were selling property of the estate to some of the adult distributees, and, instead of having it paid for by their money in the bank on deposit, exacted from them notes at ten per cent interest per annum. The record shows further than there was on hand to the credit of the estate in the bank at the end of 1890 some $11,700, and that this sum was continually increasing and unemployed until the month of February, 1892, when it amounted to over $33,000, and at the same time there was in the bank, from the North Carolina administration, an additional amount of money, which in November, 1890, had reached the sum of more than $10,800, and in February, 1892, had increased to over $11,000; making the aggregate amount in the bank on these two funds, both of which belong to these heirs, and the difference between which was merely technical, a sum of money ranging from over $11,000 to over $44,000 in February, 1892. Yet the record shows that these executors sold the household furniture to Mrs. S. D. Bryant, one of the heirs, for the sum of $297, on the 16th of April, 1890, and charged her six per cent interest on the purchase money until the distribution was made in February, 1892, although at the time of the sale there was in the bank, belonging to the estate, one-seventh of which was Mrs. Bryant's money, over $16,000 in cash; and the record further shows that the executors were loaning an heir, for the bank, a sum of money aggregating nearly $5,000, at ten per

cent interest per annum. Further, this record shows that in the same way, and during the same time, the executors sold, to Norfleet Owens, Silas Owens' one-half interest in the stock of merchandise belonging to Silas and A. T. Owens for $746, and charged him interest at ten per cent per annum, and were also loaning him various sums of money, on which he was charged ten per cent interest for the bank, all of which sums were held out of his distributive share in February, 1892, and the widow was dealt with in the same way. (It was the bounden duty of these executors to make annual accounts, and exhibit to the court the condition of the estate in their hands; and yet until this proceeding was instituted, in 1900, more than ten years after they had qualified as executors, they had filed only one annual account, and that not until two years and four months after they had taken out letters. The estate owed no debts whatever, and in such case they should have made a distribution, under the statute, at a period not later than twelve months after they had qualified as executors—to wit, September, 1890. Yet they made no such distribution, but held in their hands in their bank a sum of money ranging from $18,000 to $44,000, without any reason whatever—"dead in their hands, without reason or necessity, when it ought to have been distributed," to use the expressive language of this court in *Anderson* v. *Gregg,* 44 Miss., 182. Some of these heirs were then of age, and by the express provisions of Silas Owens' will they were entitled to their money; but they not only did not get it upon arrival at age, as clearly shown by these accounts and vouchers, but, on the contrary, interest at ten per cent per annum was exacted from them on credit sales made to them of the estate property and on loans made to them by the bank. It certainly needs no citation of authorities to show, on these facts, that, on both the Mississippi administration and the North Carolina administration, the executors should have been charged with interest, compounded at six per cent per annum, on the average amounts on hand during the aggregate period from September,

1890, one year after letters were taken out, to the date of final settlement. They should, however, be credited with a rate of interest allowed by the bank for two years at six per cent per annum, and afterwards at four per cent per annum.

It is very strongly urged, and a great many authorities are cited to support the proposition, that inasmuch as these executors styled themselves testamentary guardians, and charged themselves up as testamentary guardians on the books of the bank, they should be dealt with as guardians, and estopped to deny that they were, and charged with interest at ten per cent per annum, compounded. The will did not make them guardians; they were never appointed guardians by the chancery court; and Price gives as his explanation of why he signed himself "testamentary guardian" in a petition which he himself drew, and charged himself as testamentary guardian on the books of the bank, that he did so simply to keep the accounts of the minor heirs separate. We are not prepared to say, in view of the whole testimony touching this matter, and in view of the rule laid down in *Troup* v. *Rice,* 55 Miss., 278, as to the rate of interest to be charged in such cases, that any higher rate than the legal rate—six per cent per annum—should be charged against these executors.

As to the second assignment of error, it is enough to say that, on the whole, we do not think it is supported by the testimony.

As to the third assignment of error, we think the court should have charged these executors with interest on the small sum involved for the period they allowed it to remain in the hands of Latham, Alexander & Co., without excuse therefor. They left this money in the hands of these New York bankers for nearly fifteen years, and in fact never collected it until compelled to do so by this proceeding.

As stated, the matters of commissions and of attorney's fees were reserved by the chancellor, and are not before us for re-

vision, and this obviously disposes of the fourth and fifth assignments of error.

The seventh assignment of error is clearly well taken in part. There is an observation to be made about this assignment —to wit, that it fails to note the fact that A. T. Owens did not pay back any part of the $1,610 allowed him for commissions to the surviving widow of Silas Owens. It is plainly shown by the vouchers that he paid the whole sum to his nieces and nephews. The widow was just as clearly entitled to her one-seventh part as the nieces and nephews to their respective parts. There were seven heirs, including the widow, and one-seventh of $1,610 would be $230; and if, therefore, A. T. Owens had returned his commissions to the estate, or distributed the same amongst all the heirs, as Price erroneously says he did, then each of the heirs would have been credited with $230; but the fact is that, under the bookkeeping, the widow was left out entirely, for one-sixth of $1,610 is $268.33 1-3, and this is the exact sum, to a cent, credited to each of the minor children. Whilst it is true that technically it may be said that Owens, since he left out the widow and receipted for the commissions, dealt with the commissions as his own, and made a donation of them, not to the estate in general, but to his six nieces and nephews, yet what he intended is clear, and substance must not be sacrificed to form. He declined to receive any commissions whatever. He actually had outside counsel to intervene and get Chancellor Trigg to reduce the commissions from five per cent, the rate first allowed, to four per cent, and then immediately directed Price to credit back his commissions to the estate. That was his purpose, clear and definite—to accept no commissions whatever, and to return those allowed to his brother's estate. Because subsequently he and Price, in making out their final account, in the mere matter of form, credited only the six minor children, instead of crediting the widow as well, to hold that the manifest intention of A. T. Owens, the real fact standing out clear, shall be sacrificed to a mere trick of bookkeeping,

would be to substitute shadow for substance, a thing which a court of equity abhors. We therefore think that the action of the court below was substantially correct in this matter, but subject to this modification: That the final account should be so restated as to secure to the widow her share, and give the six children of Silas Owens only one-seventh part each, instead of one-sixth part of said commmissions. To this extent only the said seventh assignment of error should be sustained, A. T. Owens' estate being credited with the whole $1,610.

It follows from these views that the chancellor in the court below erred in the respects indicated, and that the decree on the cross-appeal is reversed in these particulars, and the cause remanded on cross-appeal, to be proceeded with in accordance with this opinion. The costs attending the appeal of Mrs. Laura L. Owens, executrix, will be taxed against her as executrix; the other costs will be taxed against the executors.

*Decreed accordingly.*