RUSSELL *v.* RUSSELL.

(Division B. Nov. 21, 1932.)

[144 So. 542. No. 30167.]

J. M. Travis, of Meridian, for appellant.

**Deavours & Hilbun,** of Laurel, for appellee.

Argued orally by **J. M. Travis,** for appellant, and by **Henry Hilbun,** for appellee.

**Griffith, J.,** delivered the opinion of the court.

Appellee is the daughter and only heir at law of her father, G. L. Russell, who died on April 20, 1920. At that time the said daughter was about eleven years of age. Her uncle, P. T. Chatham, was appointed her guardian in April or in May, 1920, and about the same time another uncle, the appellant, S. D. Russell, was appointed administrator of the estate of the deceased.

The administrator filed his first annual account on December 9, 1921, which account showed receipts in the aggregate sum of forty-six thousand, forty-eight dollars and sixty-one cents, expenditures in the aggregate of twenty-one thousand, three hundred ninety-four dollars and sixty-nine cents, and a balance on hand of twenty-four thousand, six hundred fifty-four dollars and fifty-two cents. On September 14, 1922, the administrator filed his second annual account, showing a balance on hand and due the estate of twenty-one thousand, two hundred eighty-eight dollars and six cents; and on January 13, 1925, the third annual account was filed admitting a balance due the estate of nineteen thousand, nine hundred twenty-one dollars and seventy cents. At this time, as is shown by the evidence, the estate had been fully administered. Therefore the so-called third annual account filed as aforesaid on January 13, 1925, should have been a final account, and the court should have required a final settlement and distribution at that time.

But instead of enforcing a final account and distribution as is required by law, the court and the guardian slept on the matter, and nothing was done until the month of June, 1930, more than five years later, at which time the guardian filed a petition against the administrator to compel a settlement. It is true that the guardian avers that he had from time to time requested and urged the administrator to make his final settlement, but it is apparent from this record that the efforts of said guardian were extremely feeble, and that no effec-

tive steps were taken until the late date of June, 1930, when the ward was about to come of age, and when, too, the administrator had become insolvent and unable to make settlement except by ultimate recourse upon his bond. Whether his bond is now worth anything does not appear of record.

For five or six years next before the date now to be mentioned, the ward had been a student in Baylor College at Belton, Texas. She came back to Mississippi every Christmas and usually in the summer vacations. She came to Mississippi during the Christmas holidays of 1930 and visited during the time in the homes of both her uncles, the guardian and the administrator. It is the undisputed evidence that the ward knew nothing of what was due her by her guardian or what was due by the administrator to her as the sole distributee of her father's estate. She had left the entire matter to her guardian. She had become of age in September, 1930, and although she was at home with her guardian and her other uncle, the administrator, and although she had been long due a settlement and the petition aforesaid was then pending in court and the court session at which the petition for settlement was to be heard was due to be held in January, 1931, nothing was said to her about said matters during her said Christmas visit in 1930.

She returned to her college duties in Texas at the usual time; that is to say, shortly after January 1, 1931. When she arrived, traveling by train, she found that her uncle, the administrator, accompanied by his wife and daughter, had also arrived on the campus of the college, and, as soon as the interview could be conveniently arranged the said administrator and uncle proposed to appellee that she accept his personal promissory note, without security, in the sum of thirty-four thousand dollars, due November 15, 1931, in exchange for a full release to him of all sums due her as a distributee of her father's estate. We will not recount the various arguments, representations, and persuasions resorted to by said administrator,

except to say that, among other representations by said administrator, he assured appellee that he was entirely responsible for the amount of the note and that the same would be collectible, or, as expressed at the time, "would be as good as gold;" whereas the fact was that the said administrator was personally insolvent with unsatisfied judgments hanging over his head.

It seems that the amount of thirty-four thousand dollars was arrived at by adding to the balance of the 1925 annual account, several items of interest on United States bonds which had been collected by said administrator and also the principal amount of said bonds which, although theretofore in the possession of the guardian, had been by the latter delivered over to the delinquent administrator in 1929 or 1930, and it seems too that the amount mentioned was in approximate round figures rather than the exact amount due; and the amount in either event included no interest on the balance due from the 1925 account or for any other amount collected and held dead in the hands of the administrator through the long delinquent period in question.

As already stated, appellee knew nothing of these matters nor of the correct amounts due her, nor anything of the bankrupt financial condition of the adminstrator. She was then hundreds of miles from home and from any dependable sources of information or opportunities of advice. She suggested and insisted, therefore, that the matter be delayed until she could inform herself and be able to give intelligent thought upon it, in response to which the administrator, aided by his wife, besought appellee to close the matter at once because the court term was immediately at hand at which an accounting would have to be returned. The result was that appellee then asquiesced in the acceptance of the note for thirty-four thousand dollars, soon afterwards found by her to be worthless, and executed her receipt or release in full to said administrator.

Appellee in a few days became convinced that much was wrong about the matter, and she thereupon left school and returned to Mississippi, where she at once discovered that she had been grievously swindled. She thereupon tendered the note to said administrator, and informed him in writing that because of the false representations made to her, in reliance upon which she had acted, she had elected to rescind and repudiate the settlement transaction. Appellant, the administrator, declined to accept the return of the note, and on the same day of the tender, to-wit, on January 28, 1931, he filed in court his pretended final account in which, by taking credit for the worthless note of thirty-four thousand dollars, he was able to apparently balance his account with said estate, although he charged himself with no interest in his statement of the account.

Appellee duly filed her objections and exceptions to said pretended final account, upon which a hearing was had before the chancellor, as a result of which the chancellor entered a decree canceling the thirty-four thousand dollar settlement as fraudulent, and charging the administrator with all balances of sums which had been received by said administrator and which had been used by the administrator for his own personal benefit, or had been allowed by him to be dead in his hands without reason or necessity when there should have been distribution, together with interest, compounded at six per cent per annum, which sums with the interest thus computed amounted in the aggregate to thirty-six thousand two hundred thirty-four dollars and fifty cents. The court also ordered the said administrator to deliver to appellee the said United States bonds in the sum of twelve thousand dollars, which had been delivered to said administrator, and about which no explanation was given by him as to what had become of them. In fact, the said administrator did not testify at all at the hearing.

There are several assignments of error, all of which have been carefully considered, and none of which is, as

we think, well founded in this record. We will refer to three of them:

First, that the court was in error in charging the administrator with interest, compounded at the rate of six per cent per annum. The court was not only right in so adjudging, but it was the duty of the court so to do, in a case such as this. When an administrator unreasonably delays to make his final settlement, and uses the funds for his own purposes or holds them dead in his hands without just cause, the interest as stated must be charged and compounded as the court did in this case. Owens v. Owens' Estate, 84 Miss. 673, 689, 37 So. 149; 24 C. J., p. 73.

Second, that the court erred in setting aside the pretended thirty-four thousand dollars release. When an administrator delays the settlement of an estate and withholds distribution until the distributee arrives at age and then attempts a settlement direct with the distributee, the administrator is within the same reason and is held to the same rule which controls in the settlement of a guardian with his ward who has just arrived at majority, and that rule is that: "A settlement so made will be closely scrutinized, and the burden of proving good faith rests upon the guardian. . . . To sustain a private settlement or release by the ward, its fairness must be clearly shown, and it will be ineffective if the ward has acted in ignorance of his rights or the guardian is chargeable with fraud, undue influence or failure to disclose facts which it is his duty to disclose." 28 C. J., p. 1229. See, also, the concluding sentence of section 1893, Code 1930. It is enough, under the stated rule, to condemn the pretended settlement that the administrator represented himself to be solvent and that the note was "as good as gold" when that representation was grossly false, as is the case here, according to the record before us.

Third that the court erred in ordering the twelve thousand dollars in United States bonds delivered over to

appellee. Appellant contends that the court instead should have given a decree for the value of the bonds, and appellant's asserted reason for this contention is that there is no evidence in the record that the administrator now has the bonds in his possession, and hence it is not shown that he could comply with the order. It is undisputed that they were delivered by the guardian to the said administrator as late as 1929 or 1930; and it does not lie in the mouth of the administrator, who gives no explanation as to what he has done with them, to argue that he is now to be assumed not to have them. We are of the opinion that the order of the chancellor was correct, and we think the order was prudent for this reason: It may be that the chancellor had in mind the thought that the guardian might be liable for delivering these bonds to this delinquent administrator, and he was thus holding open an avenue for a procedure against the guardian for the value of these bonds, and which might have been cut off had a money decree for their value been entered against the administrator. We approve the decree of the chancellor in every feature.

Affirmed.