505 So.2d 1015 (1987)
ESTATE OF Katherine VAN RYAN & Estate of Anthony Van Ryan
v.
James O. McMURTRAY & Nellie M. Bauman.
No. 56932.
Supreme Court of Mississippi.
April 15, 1987.
*1016 Edward J. Currie, Jr., Mildred M. Morris, Steen, Reynolds, Dalehite & Currie, Jackson, for appellant.
Earl L. Denham, Levi & Denham, Ocean Springs, for appellees.
Before HAWKINS, P.J., and PRATHER and SULLIVAN, JJ.
PRATHER, Justice, for the court:
This appeal challenges the award of quantum meruit by Jackson County Chancery Court Judge Glen Barlow to James O. McMurtray (trustee) for the estate of Katherine Van Ryan and Nellie M. Bauman (conservator) of the estate, for assistance rendered the Van Ryans during the last years of their lives. For the personal use of funds entrusted to them, Nellie Bauman was ordered to return $41,492.77 of $71,492.77 spent for her personal use, James O. McMurtray was ordered to return $1,346.30 of $31,346.30 deposited into his personal account, affording each defendant $30,000 quantum meruit. The lower court ordered that the amounts plus the interest from day of judgment were to be paid to the estates and that Bauman and McMurtray pay one-half the court cost. The estate of Katherine Van Ryan and the estate of Anthony Van Ryan appeal contesting the award of quantum meruit and the denial of prejudgment interests. Bauman and McMurtray cross-appeal alleging the chancellor erred in failing to find wholly for Bauman and McMurtray and the chancellor erred in not applying laches to the claim of the Van Ryans' estates.

I.
Katherine and Anthony Van Ryan were immigrants from Holland who, in 1969, settled in Ocean Springs, Mississippi next door to Nellie M. Bauman. They lived there until their deaths approximately ten years later. Mrs. Nellie Bauman and her brother, James O. McMurtray, developed a close relationship with the Van Ryans in many personal ways. Nellie Bauman prepared meals on special occasions, ran errands to the bank, post office, and grocery, visited in the home and rendered personal services to Mrs. Van Ryan when she was confined to a wheelchair and in declining health, and became Mrs. Van Ryan's confidant. Mr. James McMurtray and Anthony Van Ryan also became close associates and friends. They performed chores together, such as car repairs, house maintenance, cutting firewood, and enjoyed fishing and playing chess. This friendship brought the parties together to share holidays, birthdays, and other special occasions.
Both Mr. and Mrs. Van Ryan had relatives in Holland. Mr. Van Ryan has at least two sisters and a brother, and child born outside his marriage. Mrs. Van Ryan had a brother who did not enjoy a close relationship to the Van Ryans.
Mr. Van Ryan held a degree of engineering while in Holland and was a man of intelligence reportedly knowing a great deal regarding legal and financial matters. He had accumulated an estate of some substantial value.
The appellants' statement of facts succinctly set forth the facts of this case. On September 2, 1976, Mr. Van Ryan established a trust, appointing James O. McMurtray as trustee, to provide for Mrs. Van Ryan's care in the event that Mr. Van Ryan became incapable of doing so. Mr. Van Ryan was advanced in years and in poor health. Assets of the trust were certificates *1017 of deposit, and its provisions provided that the trust could be revoked only in writing.
Around August, 1979, Anthony Van Ryan found that he was suffering from terminal cancer. At that time, the appellee, Nellie Bauman, the sister of James O. McMurtray, was appointed attorney-in-fact for Katherine Van Ryan and later for Anthony Van Ryan as well. That same year, Mrs. Bauman's name was placed on bank accounts and certificates of deposit belonging to Mr. and Mrs. Van Ryan. The signature cards authorizing the addition of Mrs. Bauman's name were signed at the Van Ryan home.
On November 1, 1979, a conservatorship was set up to preserve Mrs. Van Ryan's assets. Nellie Bauman was appointed conservator of Katherine Van Ryan. On November 15, 1979, while Mrs. Bauman was conservator of Katherine Van Ryan and was attorney-in-fact for Katherine and Anthony Van Ryan, Mrs. Bauman withdrew $16,454.75 from the joint account of Mr. and Mrs. Van Ryan on deposit at the Coast Federal Savings & Loan Association. On that same day, Mrs. Bauman opened a new account at Southern Savings & Loan Association in Gulfport, Mississippi, in the names of Anthony Van Ryan and Nellie M. Bauman. Mrs. Bauman opened the account at Southern Savings without obtaining Mr. Van Ryan's signature but by attaching to the signature card of the account the limited power of attorney.
Anthony Van Ryan died on December 19, 1979, and L.C. Corban, Jr., was appointed executor on January 14, 1980. On or about January 4, 1980, the appellee James O. McMurtray withdrew $31,346.30, which represented the remaining assets of the Katherine Van Ryan trust, from the trust, endorsing the four checks he received as trustee and depositing them to his own account.
On that same day, at a time when Mrs. Van Ryan was hospitalized, the appellee, Nellie Bauman, while acting as conservator and attorney-in-fact, withdrew an additional total of $55,038.02 from Mr. Van Ryan's passbook savings account and certificates of deposit at a time when the certificates of deposit had not matured. Three checks in the amount of $10,000 and one check in the amount of $516.57 were obtained from First Federal Savings & Loan Association at their branch in Pascagoula, Mississippi. On that same date, Mrs. Bauman also withdrew $14,521.45 from the passbook account at First Federal Savings & Loan in Ocean Springs, Mississippi, closing that account out. On that same date, Nellie Bauman also went to the Coast Federal Savings & Loan Association in Gulfport, Mississippi, and withdrew $10,000.00. The checks obtained from First Federal in Pascagoula were cashed at the Merchant & Marine Bank in Pascagoula. The $10,000 check from the passbook account was cashed at the Pascagoula and Moss Point Bank. The check for $4,521.45 from the passbook account was cashed at First National Bank of the South in Ocean Springs. On the same day, $10,000 was withdrawn from Coast Federal Savings & Loan Association. It was cashed at the Peoples Bank of Biloxi. The total of all those withdrawals was placed in Mrs. Bauman's safety deposit box.
By letter dated February 12, 1980, Katherine Van Ryan informed James O. McMurtray that she was revoking the trust agreement in which Mr. McMurtray was named as trustee. Mrs. Van Ryan requested that all assets of the trust be turned over to her new conservator, Fred W. Huebner, and that an accounting of the trust assets be delivered to Mr. Huebner. Mr. McMurtray responded to that letter by declaring that the trust had been verbally terminated in October, 1979, and never returned the funds or accounted for them.
Mrs. Van Ryan died on May 19, 1980. After her death the executor, in an attempt to determine the extent of her assets, eventually discovered that substantial sums could not be accounted for.
In December, 1982, complaints were filed in the Circuit Court of Jackson County against both Mr. McMurtray and Mrs. Bauman. These complaints were consolidated and the cause transferred to chancery court. On January 9, 1984, complaint was *1018 filed in the Chancery Court of Jackson County by the estates of Katherine Van Ryan and Anthony Van Ryan against James O. McMurtray and Nellie M. Bauman. The plaintiffs, appellants here, alleged that both defendants, while serving in a fiduciary capacity, deliberately converted the assets of Katherine Van Ryan and the estate of Anthony Van Ryan. Trial was held on November 7 and 8, 1984, in the Chancery Court of Jackson County, Mississippi. On March 5, 1985, the case was reopened on motion of the defendants.
The court determined that a fiduciary relationship existed between Anthony Van Ryan and James O. McMurtray and between Anthony and Katherine Van Ryan and Nellie Bauman. The court further determined that the fiduciary relationships were violated when the defendants/appellees took the certificates of deposit and cashed and placed these funds in their own names. Defendants/appellees' contention that the funds taken represented gifts from Anthony and Katherine Van Ryan was rejected by the chancellor. That determination was based upon two separate findings of the chancellor: (1) that Mr. Van Ryan, knowing of his wife's poor health, would not have given the money held in trust for her care at a time when he knew of his impending death and her need to be provided for; and (2) for any alleged inter vivos gifts to stand, there must have been a showing that the alleged gifts were made on the advice of a competent person totally disconnected from the recipients and devoted to the Van Ryans' interest and that no such showing had been made.
However, the chancellor, after having made the above findings of fact, then ruled that the defendants/appellees should be entitled to quantum meruit in the sum of $30,000 each, which would offset the amount they should return to the estates of Katherine and Anthony Van Ryan. Further, the court determined that no punitive damages would be allowable because of the care the defendants/appellees had given to the Van Ryans. Further, the chancellor denied any prejudgment interest from the time that the funds were taken.
Appellants now appeal assigning as error that the chancellor was manifestly wrong in:
(1) awarding quantum meruit to the appellees, McMurtray and Bauman, and
(2) in denying prejudgment interest to the appellants.

II.

Was the chancellor manifestly wrong in awarding quantum meruit to appellees?
Initially, it must be noted that appellees never asked for an award of quantum meruit. They relied upon a claim of inter vivos gift, which was denied by the chancellor.
The holdings of this Court relating to establishment of a claim for quantum meruit have stated in the recent case of Liddell v. Jones, 482 So.2d 1131 (Miss. 1986) the following quote from Collins' Estate v. Dunn, 233 Miss. 636, 644-645, 103 So.2d 425 (1958), stating:
This Court has said, however, many times, that claims of the character mentioned above, brought up for the first time after the death of the decedent, are looked upon by the courts with disfavor; and in order to maintain such a claim the evidence must clearly establish a contract, express or implied, between the claimant and the decedent, for the payment of compensation for such service. Bell v. Oates, 97 Miss. 790, 53 So. 491; Ellis v. Berry supra [145 Miss. 652, 110 So. 211]; Wells et al v. Brooks, 199 Miss. 327, 24 So.2d 533.
In the Liddell case, there was testimony that the decedent, Madison Liddell, did intend to will his property to Leroy Liddell because Leroy had taken care of him. However, this Court determined that there was no proof that Leroy Liddell had ever rendered services with the expectation that something would be given to him in return. Thus, an important element required for a contractual agreement was missing, and Leroy Liddell was entitled to no compensation. There was no issue of violation of a fiduciary relationship in that case.
*1019 In the case now before this Court, it is apparent from the testimonies offered by defendants/appellees that any services they may have performed for Mr. and Mrs. Van Ryan were performed with no expectation for remuneration. Mr. McMurtray testified that neither Mr. or Mrs. Van Ryan ever owed him any money and that he had never expected any compensation for his services as trustee or for the various errands he ran for the Van Ryans. He also stated that he had informed the Van Ryans that he had not earned the sum he alleges was given to him. Mrs. Bauman testified that neither Mr. nor Mrs. Van Ryan was ever indebted to her.
Although the chancellor found that both Mr. McMurtray and Mrs. Bauman had violated their fiduciary duties by taking money to which they were not entitled, he nevertheless, awarded them a substantial portion of the money which they had taken. Clearly, the conduct of both Mr. McMurtray and Mrs. Bauman was so willful and inequitable that their hands were unclean. Thus, the learned chancellor violated the long standing rule that to be entitled to equitable relief, one must come into court with clean hands. In Re: Stoball's Will, 211 Miss. 15, 50 So.2d 635 (1951); Parker v. Ainsworth, 233 Miss. 806, 103 So.2d 389 (1958). That doctrine would have been applicable in situations much less serious than the one presented to the chancellor in this case. The unclean hands doctrine may be invoked even when the conduct charged is not of such a nature to justify legal proceedings. Thigpen v. Kennedy, 238 So.2d 744 (Miss. 1970). In fact, this Court has held that when it is evident by the facts of the case that the unclean hands doctrine is applicable, the chancellor has a duty to apply that doctrine of its own motion. Id. In this case, the chancellor determined that the appellees here, defendants below, breached their fiduciary duty and actually took funds which had been part of a trust and/or conservatorship and applied those funds to their own interest. However, the chancellor then awarded a large portion of those converted funds to the appellees based upon "equitable principles."
This Court holds, as appellants assert, manifest error was committed and such quantum meruit award must be reversed and the appellees receive no sums in the form of quantum meruit.

III.

Was the chancellor manifestly wrong in denying prejudgment interest to the appellants?
Under Mississippi law, one is entitled to interest from the date that money is due if the amount is liquidated and there is no legitimate dispute that the money is owed. Glantz Contracting Co. v. General Electric Co., 379 So.2d 912 (Miss. 1980); Trinadad Asphalt Manufacturing Co. v. Gregory, 166 F.2d 745 (5th.Cir.1948). The facts in the case now before the Court are similar to the case of Russell v. Russell, 164 Miss. 335, 144 So. 542 (1932). In that case, Betty Russell filed suit against her uncle, S.D. Russell, who was the administrator of Ms. Russell's father's estate, to which Ms. Russell was the sole heir. The administrator had delayed making a final settlement and had used funds of the estate for his own purposes. The Court determined that the awarding of interest in a case such as that, where a fiduciary relationship had been breached, was not discretionary. In the Court's language, "the Court was not only right in so adjudging, but it was the duty of the court so to do, in a case such as this ... . [t]he interest as stated must be charged and compounded as the court did in this case." Id., 144 So. 544.
Under the decision of Russell, it appears that prejudgment interest is chargeable, and that the appellees are obligated to pay interest at the statutory rate from the date of their taking. This denial by the trial court is therefore reversed and prejudgment interest awarded. The Court finds no merit in the cross-appeal.
REVERSED AND RENDERED, AND CAUSE REMANDED TO CHANCERY COURT FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.
*1020 WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.