HAYES *et al. v.* NATIONAL SURETY CO. *et al.*

(Division B. March 19, 1934. Suggestion of Error Overruled April 2, 1934.)

[153 So. 515. No. 31099.]

**Stone & Stone**, of Coffeeville, for appellants and cross-appellees.

John M. Kuykendall, of Charleston, and Longstreet Heiskell, of Memphis, Tennessee, for appellees.

J. J. Breland, of Sumner, and Roberson & Cook, of Clarksdale, amicus curiae.

Argued orally by **W. I. Stone,** for appellant, and by .Longstreet Heiskell, for appellee.

**Griffith, J.,** delivered the opinion of the court.

The voluminous record in this case presents a picture of unusual human interest. It deals with the estates of two negro neighbors who each in his early manhood settled in Tallahatchie county and who at their deaths each left a large estate. One of these, Albert Johnson, who could neither read nor write, owned an unincumbered plantation of more than two thousand acres, which with its ample equipment was estimated to be worth more than one million dollars. Over against this inspiring example of what may be done by the humblest among our people by industry and thrift, there is disclosed the pathetic result that in a few short years after the demise of these two men, their incompetent and wasteful de-

scendants had entirely squandered and lost these hard earned estates.

Scarcely less pathetic is the picture reflected by this record of the neglect of the chancery court in dealing with these estates. It calls to mind a statement recently made by a distinguished chancellor, now presiding in one of the important districts, that if all the money and property, lost to widows and orphans by the neglect of the chancery courts of their probate matters during the generation just past, were gathered into an aggregate sum, it would be equal to the entire bonded debt of the state. Such is the enormity of the price that the people of this state have had to pay because of the custom, until recently, of chancellors waiting until a matter was set on the docket by a party before being attended to by the court. Happily all this has been changed now, both in equity and in probate, by sections 330-333 and 1735, Code 1930, so far as the law is concerned, and the hope may be indulged that these sections will be dutifully observed, and that in only a few more years all this sad neglect will have ceased in every district in the state.

This case was recently before this court, Hayes v. Holman, 165 Miss. 494, 144 So. 690, and in the opinion by Judge ETHRIDGE we there called attention in some detail to the neglect above mentioned, and to the duties of the chancery courts in estate matters. Some outline of the facts of this litigation were stated, and the case was remanded for the further and better development of the facts. Little additional, however, has been produced as a result of further efforts, and what was said by the court in our former opinion has been emphasized by what is now finally before us. Neglect of administrators to report and to account, neglect of the clerk to record and preserve material papers and records, and neglect of the former attorneys and chancellors to perform their manifest duties, have combined into the result that the most diligent efforts now made at this late day have enabled the present litigants to do no more

than present a fragmentary and scarcely dependable sketch of what happened in these estates—hardly enough ground upon which to stand in any sense of security that what we now adjudge is according the right as it actually existed.

On November 18, 1918, W. W. Hayes of Tallahatchie county died, leaving a considerable personal estate, and on November 25, 1918, A. J. Johnson, his neighbor, was appointed administrator, under a bond with personal sureties in the penalty of sixty thousand dollars. The general docket of the chancery court of the county in the W. W. Hayes estate shows that an inventory was filed by the administrator in due time, but this inventory was not recorded as required by section 326, Code 1930, and has been lost. The docket shows also that appraisers were appointed, but the order of appointment was not recorded and the order and warrant have both been lost. The appraisement was filed on December 27, 1918. It was not recorded as required by the section last cited, but it has been found and is now before us.

A. J. Johnson, the administrator, died on October 3, 1919, before the due date of the first annual account of his administration. He had filed no report or account, and except for the matters hereinafter mentioned, we are without dependable evidence as to what exactly was done by him. As to what was received by him as administrator, we may look to the appraisement, because of the statute, section 1644, Code 1930, which provides that where an appraisement has been made the administrator shall be charged therewith unless he show cause to the contrary. Some technical objection has been made to the appraisement as evidence, but we think the objections are not well taken; the apparent defects being supplied by the general operation of the presumption that those incidental procedural steps which officially should have been taken were in fact taken, there appearing no evidence to the contrary.

It is first to be noticed that this appraisement contains

a list of accounts due to the estate of Hayes, the life insurance to be collected, and the money on hand; the total of these items amounting to sixteen thousand eight hundred ninety-five dollars and ninety-three cents. The appraisement is no evidence against the administrator in respect to those items. An appraisement does not legally deal with money and choses in action, section 1654, Code 1930; those items are to be returned by the inventory, section 1644, Code 1930, and not by the appraisement. A. J. Johnson as administrator is to be charged nevertheless with the three hundred fourteen dollars and forty-seven cents cash received, not because the appraisement charges him with that amount, but because the bank record hereinafter referred to shows that he received it as a cash deposit; and he is to be charged with the ten thousand dollars life insurance because the evidence outside of the appraisement shows that he collected it. The force of section 1644, Code 1930, in its provision that an administrator shall be charged with what is shown by the appraisement, does not preclude the proper parties in interest from proving that the administrator received more than was legally disclosed by the appraisement, and that the articles or items appraised were actually worth more than the respective appraised amounts. Davis v. Blumenberg, 107 Miss. 432, 436, 65 So. 503. And conversely the provision that the administrator shall stand charged with the appraisement, unless he show cause to the contrary, does not limit that showing to one by the administrator himself, but may be made by any proper person who is sought to be charged with the liability of the administrator. The appraisement, so far as concerns those items or articles with which it is authorized by law to deal, stands as a correct charge prima facie against the administrator and prevails where there is no dependable evidence to the contrary. But that the administrator actually received more or less than charged to him by the ap-

praisement may be shown by competent evidence adduced by any proper party in interest.

The appraisement charges the administrator with eighty bales cotton gined, and forty bales in pens and field; the total appraised value of the cotton being placed at eighteen thousand dollars. There is added also cotton seed at the appraised value of two thousand seven hundred twenty dollars, making a total of twenty thousand seven hundred twenty dollars. But the undisputed testimony is that this cotton crop was produced by tenants working on shares and that the tenants' share was two-thirds of the cotton crop produced, and the testimony is further that Johnson, the original administrator, settled with these share croppers. But whether he did or not, the estate of Hayes was entitled to one-third, and not the entire, of this crop; and, in consequence, A. J. Johnson, the administrator, is chargeable in favor of the Hayes estate with that one-third, instead of the whole. One-third of the twenty thousand seven hundred twenty dollars is six thousand nine hundred six dollars and sixty-six cents, which added to the insurance and money on hand makes a grand total of seventeen thousand two hundred twenty-one dollars and thirteen cents.

The appraisement charged the administrator also with the following personal property which, from the nature and character thereof, it is fairly certain was then on the Hayes plantation, and which was never removed therefrom, to-wit, fourteen head of mules, two mares and colts, four wagons, plows and harness, one buggy, eight hundred bushels of corn twenty-five head of hogs, and one automobile, of the total appraised value of five thousand seven hundred fifty dollars. On February 21, 1919, Johnson, the administrator, applied to the court for authority to cultivate the lands of the decedent Hayes, which petition was by the court granted; and the testimony is undisputed that the plantation was cultivated under the directions of Johnson, the administrator, up

to the time of the death of Johnson on October 3, 1919, and that thereupon Bennie Hayes, the widow of W. W. Hayes, was on October 8, 1919, appointed administratrix de bonis non and proceeded to finish the crop. The widow and children had remained on the land. Without reviewing all the further facts and circumstances which lead to that conclusion, as the only reasonable probability, we are of the opinion that although Johnson, the original administrator, was technically chargeable with the property mentioned in this paragraph, it never in fact actually came into his hands, but remained on the Hayes plantation and thus came to Bennie Hayes, administratrix de bonis non, so that she, as administratrix de bonis non, and not Johnson, is to be finally charged therewith.

But Bennie Hayes, administratrix de bonis non, is not to be charged with the entire of the five thousand seven hundred fifty dollars mentioned. Under section 1656, Code 1930, it was the duty of the appraisers to set apart to the widow and children out of this personal property such of it as was exempt. The appraisers did not do this; but the same section further provides that if the appraisers fail in this respect the exempt personal property shall nevertheless vest in the widow and children by operation of law. Taking the list of this personal property and applying to it section 1755, Code 1930, which section specifies what personal property is exempt, we find that the value of that part exempt, using the valuations made by the appraisers, is a total of one-thousand two hundred twenty-five dollars, which deducted from the five thousand seven hundred fifty dollars, leaves a balance of four thousand five hundred twenty-five dollars with which Bennie Hayes as administratrix de bonis non is to be charged, in addition to the two hundred twenty-nine dollars and twelve cents which the court charged against her in the final decree in this case.

At this late day, when everybody who would have accurate knowledge of the details of what was done in these estates has died or moved away, the only definite

evidence which the parties have been able to find in reference to what was done by A. J. Johnson, the original administrator, with the money and the proceeds of the crop which came into his hands is that shown by the original ledger sheets of the then existing Bank of Tallahatchie, where the account of A. J. Johnson, as administrator of the estate of W. W. Hayes, was kept. These ledger sheets and the account shown thereon have been sufficiently authenticated by a witness who had assisted in keeping them, so that they were properly receivable in evidence under the cases Chicago, St. L. & N. O. Co. v. Provine, 61 Miss. 288; Grenada Cotton Compress Co. v. Atkinson, 94 Miss. 93, 47 So. 644; and Greene v. Greene, 145 Miss. 87, 110 So. 218, 49 A. L. R. 565. This account shows that an amount in excess of that received by A. J. Johnson from the crops and money, including the proceeds of the two insurance policies, was paid out by him before his death. It is true that the evidence does not show for what purposes all this money was paid out, but it does show that A. J. Johnson spent it during his lifetime and that none of it came into the hands of his administrator except the sum of one hundred sixty-seven dollars and twenty-six cents, which was paid over to, and was later accounted for by, Bennie Hayes, as administratrix de bonis non.

Immediately after the death of A. J. Johnson, his son, Chester Johnson, was on October 11, 1919, appointed as administrator of the estate of A. J. Johnson, and gave bond in the sum of fifty thousand dollars. As already shown, none of the money or property of W. W. Hayes estate, or which was derived from the Hayes estate, came into the hands of Chester Johnson as administrator except one hundred sixty-seven dollars and twenty-six cents, which he paid over to Bennie Hayes, administratrix de bonis non, as already mentioned. Everything else had either been spent by A. J. Johnson during his lifetime, or else came into the hands of Bennie Hayes, at the death of A. J. Johnson, as hereinabove detailed.

And since nothing came into the hands of Chester Johnson, administrator, except the one hundred sixty-seven dollars and twenty-six cents, which he immediately paid over, his bondsmen cannot be made liable to appellants in this case on account of anything received by him as coming from the Hayes estate—he received nothing except the small sum subsequently paid over by him.

But section 1632, Code 1930, required Chester Johnson, administrator of the estate of A. J. Johnson, to settle the account of A. J. Johnson as administrator of the estate of W. W. Hayes. The code section is in the following words in its concluding sentence: An "administrator of an administrator shall settle the accounts of his testator or intestate in the administration of the first estate, and for that purpose shall be amenable to the jurisdiction of the court." Chester Johnson, administrator of the administrator, wholly failed in this latter duty. No such report or account was ever filed by him or by any successor for him.

There is much to indicate that if Chester Johnson, as administrator of his father's estate, had filed report and account of the administration of his father in the Hayes estate, the report and account would have shown that A. J. Johnson, administrator, had paid out every dollar that came into his hands for or from the Hayes estate, and that all the expenditures made by him, except as to five thousand dollars of the insurance money exempt, were legally made and allowable. But there is nothing now available which establishes the supposition mentioned as a dependable probability, for, on the other hand, there is much to indicate that many, not to say most, of these payments were in the discharge of demands against the estate of Hayes which were not probated and could not be legally paid in the absence of probation. It may have been that when Chester Johnson undertook the task of making this account and report, he found the very situation last suggested, and, therefore, sought refuge in postponement. The record shows

that Chester Johnson was afflicted with tuberculosis, had spent some of the time before his appointment in the West in search of health; that he was unfitted, by poor health and lack of hard training, for the enormous task of handling a vast plantation, which in land and personalty was worth approximately a million dollars; that soon after his father's death, he was thrown into a bitter litigation with his sister; that he was soon overwhelmed by what has been termed "the agricultural debacle of 1920;" that his health grew worse; and that he soon died —in July, 1921. The record fairly indicates that this young negro, afflicted and beset as he was, had hardly been able, to use a common expression, to find out "what it was all about."

But whatever might be said by way of extenuation in a particular case of the failure of an administrator of an administrator to settle the accounts of his intestate in the administration of the first estate, there is no authority in any court either to excuse the performance of that duty or to waive the consequences thereof. The statute prescribing the duty is a vital part of our general course of procedure in the administration of estates. When an administrator dies, as often happens, before the administration has been concluded, the normal course then to be taken is as follows: An administrator is appointed of the estate of the administrator, and there is appointed also an administrator de bonis non of the first estate. There is thereupon delivered to the administrator de bonis non all the personal property of the first estate which remains in kind and which is capable of specific identification as being the property of the first estate; that is to say, there is delivered to the administrator de bonis non all the unadministered assets of the first estate. But with the assets of the first estate already administered by the deceased administrator of that estate, the administrator de bonis non has for the time being nothing to do. Jurisdiction over those administered assets is placed with the administra-

tor of the administrator and he must completely report in and account to the first estate in respect of all said administered assets in that first estate. The practical and common-sense reasons why the law has been thus prescribed are obvious and furnish ample justification for the rule.

The statute mentions no particular time within which the account by the administrator of the administrator shall be filed, nor does it prescribe the formalities to be observed in respect thereof. General principles are therefore to be applied from which it follows that the account must be filed with reasonable promptness, the particular situations in each of the estates considered, and the same requirements, including those in the matter of notice to all proper parties in interest, must be observed which appertain to final accounts, for, so far as the administrator of the administrator is concerned, it is his complete and final account in the first estate—save in extremely exceptional circumstances, which conceivably might arise. And when this final account in and with the first estate has been filed by the administrator of the administrator and has been approved by the court, the decree of approval will contain the further order of the court whether the administrator of the administrator shall distribute the amount shown to be due to the first estate to the lawful distributees of said first estate or whether same shall be paid over to the administrator de bonis non, which latter course must be taken if it appear that the amount due or a part thereof will or may be needed in the payment of the debts of the first estate; and it will be the duty of the administrator of the administrator forthwith to distribute or pay over, out of the money or assets of the original administrator, in accordance with the said order of the court.

In the meantime, it is the duty of the administrator of the administrator to hold in his hands sufficient of the assets of the estate of his decedent to pay the balance due to the first estate, and this without regard to whether

the assets held by him are derivative of the first estate or whether original property of the deceased administrator, and if the administrator of the administrator fail to do so, there having come into his hands ample unincumbered assets, as is the case here, he has as completely failed to perform the duties required of him by law and has as completely breached his bond, as if he were the original administrator of the first estate and had failed to account to it for property which he received from it.

Let us see now what would have resulted had the simple procedure required by the law been pursued in this case: If Chester Johnson, the administrator of the administrator, had, say, within ninety days—the time allowed for the filing of an inventory—filed his final account for his decedent administrator in the first estate, all the requisite notices could have been given and a final hearing and decree on that account could have been had within six months, and he had all the while more than ample unincumbered personal property in his hands, to say nothing of the realty to which ultimate resort could have been had, easily to pay the balance due to the first estate. All the data to make up his account were then available; all those who could have supplied the facts in detail for that purpose were alive; the judicial records had not then been lost. But he did not do so and the court failed in its duty to make him do so, and now, after all these years, the Johnson property has been scattered and dissipated, and for the lack of the evidence then available we grope much in the dark as to what now to do.

It follows that the bondsmen of Chester Johnson are liable to these complainants, two of the three distributees of the first estate, for all the consequences of the failure of Chester Johnson as administrator to "faithfully discharge all the duties required of him by law." And since, as we have already shown, if Chester Johnson had performed those duties required of him by law, there would have been long ago paid over by Chester Johnson to the first estate the balance due to that estate by A.

J. Johnson, the original administrator, the bondsmen of Chester Johnson must now do what Chester Johnson should have done, to-wit, pay over. A devastavit is committed by an administrator—and a breach of his bond—who having in his hands unincumbered assets fails to pay them over when and as the law requires and directs. Whitfield v. Evans, 56 Miss. 488, 494.

But the liability of the bondsmen of Chester Johnson is consequential, and is a consequence of the primary liability of A. J. Johnson, the original administrator. Although at the time of the death of A. J. Johnson he was not in default of account, his first annual account not then being due, prima facie, wherefore the obligation to pay over first matured in Chester Johnson, nevertheless the facts now show that it was A. J. Johnson as administrator who spent the money of the first estate, not Chester Johnson; so that the estate of A. J. Johnson and his bondsmen are primarily liable with the result that when the bondsmen of Chester Johnson shall have made the payment herein directed to the complainants on account of the Chester Johnson bond, these bondsmen will thereupon became subrogated to all the rights which these complainants have or would have had against A. J. Johnson and his estate, and to the same extent and as fully as if Chester Johnson or any other person had never been the administrators of the A. J. Johnson estate. And just here we may notice the contention that complainants ought not recover against the bondsmen of Chester Johnson, because their demand was not probated, the answers to which are that the demand here is a liability, not a claim, and that in any event it was not necessary by probate to bring notice to Chester Johnson or his bondsmen of a liability or claim against him which his own default in the performance of duty brought about. It is conceded that the liability against the estate of A. J. Johnson and his sureties is not required to be probated.

Our conclusions are, therefore, that the estate of A.

J. Johnson and his bondsmen are liable to the complainant heirs at law and distributees of the estate of W. W. Hayes, deceased, in the aggregate of two-thirds of the sum of seventeen thousand two hundred twenty-one dollars and thirteen cents, less the one hundred sixty-seven dollars and twenty-six paid to Bennie Hayes, administratrix de bonis non. · That this is a primary liability on said estate, and that the payment of said portion of said sum shall be enforced out of the original property of A. J. Johnson if such can now be legally done, and in default thereof then out of the bondsmen of A. J. Johnson. That the bondsmen of Chester Johnson are consequentially liable for said portion of said sum, and shall pay the said portion to the said complainants and shall thereupon be subrogated as aforesaid, and in case the complainants are unable to enforce prompt payment by the bondsmen of Chester Johnson, their rights to the enforcement of payment against the estate of Albert Johnson and his bondsmen shall stand as fully available as if there had been no decree against the bondsmen of Chester Johnson. That Bennie Hayes, administratrix de bonis non, and her bondsmen are liable to the complainants for two-thirds of four thousand· five hundred twenty-five dollars plus two-thirds of two hundred twenty-nine dollars and twelve cents; there being no other sustainable charge against her as administratrix.

We say there is no further sustainable charge against Bennie Hayes, administratrix de bonis non, for the following reasons: The account filed by her showing the balance due the estate of two hundred twenty-nine dollars and twelve cents appears to have been sustained by vouchers, and was approved by the chancellor. The fact that the vouchers are now lost is not sufficient to displace the account, for it must now be presumed that they were sufficient to justify the decree of the chancellor in approving that account at the time when the original decree was entered on April 26, 1920. The claim for rent of the Hayes land farmed by Bennie Hayes

after the year of her appointment cannot be sustained against her as administratrix or against her bondsmen, because she obtained no order of the court authorizing her to cultivate the plantation, and therefore her course in the cultivation of the plantation was as a tenant in common with her coheirs and not as an administratrix.

Upon the contention that Bennie Hayes should be entitled to recover here her one-third interest against the Johnson estates, it is enough to say that she did not make herself a cross-complainant; we intimate nothing as to what might have been her rights if she had been a cross-complainant, or whether she has any enforceable rights.

We are of the opinion that interest is not allowable on the above amounts adjudicated to complainants. The right of action to recover these amounts accrued to complainants more than ten years before the institution of their suit to recover them. Although no controlling reason is made to appear why their demand was not earlier made, it has been delayed until material records, both judicial and private, have been lost, all the witnesses who would have known the facts in dependable detail have died, and now we are forced to adjudicate much in the dark because of the long delay, and against many indications that the larger part of the amounts adjudicated to them may not be actually due them at all, if all the facts were now known; to say nothing of the contingency that innocent third persons, who doubtless relied and acted upon the natural supposition that all these things had long ago passed into the realm of completed transactions, are placed in danger of being made to suffer on account of constructive notice, but who have been void of any actual wrong. Strictly speaking, complainants, because of their minority, are not to be charged with laches, but minority is a shield and not a sword, and—whatever we might have held to the contrary if the amount of the liability here were reasonably certain, reasonably free from doubt, in spite of the delay, as

was the case in Russell v. Russell, 164 Miss. 335, 144 So. 542—since the liability here is one imposed by law, not by contract between the parties, it becomes our duty, under all the circumstances of the case here in hand, to apply the rule that interest will not be allowed until the actual institution of the suit where interest is recoverable not as a part of a contract but by operation of law, and there has been such delay as would introduce the element of laches, had the complainants all the while been persons of mature age, a rule which has been upheld even as to suits by the government and is especially applied where it does not appear that the money for which the defendants are accountable has earned any interest, as is the case here. See 33 C. J. 239, 240; Sanborn v. U. S., 135 U. S. 271, 10 S. Ct. 812, 34 L. Ed. 112, 115.

The cause is remanded, with directions to enter a decree and to proceed to the enforcement thereof as outlined in this opinion; the costs of this appeal to be equally divided between appellants and cross-appellants.

Affirmed in part, reversed in part, and remanded with directions.