In re STOBALL'S ESTATE.

Division A.   Feb. 19, 1951.

No. 37833 (50 So. (2d) 635)

Forman & Torrey, for appellant.

**L. A. Whittington**, for appellee.

18

**Ethridge, C.**

This is an appeal from a decree of the Chancery Court of Franklin County, Mississippi, disallowing the requested probate of a will of Eph Stoball. The petition for probate was filed by Archie Prather, who is the grantee of the three devisees in the will, and by the devisees. Prather is the only appellant. The principal question involved is whether Prather is estopped by his actions subsequent to testator's death from probating this will under which he is now the sole claimant. We hold that he is so estopped and affirm the decree of the chancery court.

In the early fall of 1938 the testator, Eph Stoball, a Negro, was about sixty-eight years of age. He lived

about fourteen miles south of Meadville in Franklin County. His foot and leg became infected, and in September, 1938, Prather, whose property adjoined that of Stoball, was requested by Stoball to take him to the hospital in Natchez, for treatment of the infected leg. This was done, and Stoball remained in the hospital for approximately five months. After he had been there for about a month, Stoball sent for Prather and asked him to prepare a will for him according to Stoball's directions. Prather wrote the will in his own handwriting, and Stoball signed it on October 6, 1938. It was witnessed by Prather and also by a justice of the peace. Bolton v. Bolton, 1914, 107 Miss. 84, 64 So. 967. At Stoball's request, Prather took custody of the will and kept it in his possession.

When the will was executed, Stoball was not married, and had no children. The will undertook to devise in stated parts the property of Stoball, consisting of about seventy-six acres, to two of his nieces, and two of his nephews. One of the nieces died before the testator's death. After his release from the hospital, Eph Stoball married Rena Simms on April 28, 1940. They had no children. Stoball died in August, 1943. Apparently Prather was the only person at that time, other than the other witness, who had any knowledge of the existence of the will. Prather admitted that he did not show the will to the widow, but stated that he told her several months after testator's death that Eph had left a will, but he did not tell her the terms of it. The widow remained in possession of the property until February 27, 1946, when she moved to California. Shortly after Eph's death the widow undertook to sell some wood on the property to third parties, and Prather warned them not to purchase any wood or deal with her with reference to the land.

Almost immediately after testator's death, Prather, who continued to retain possession of the will and failed to disclose its contents, began trying to locate the devisees

in the will for the purpose of buying their interests from them. On October 29, 1945, one of the devisees, Martha Stoball, in consideration of $1 and the balance of $159 payable "if and when" Stoball's will would be duly established, conveyed her interest under the will to Prather. Another devisee, Elzie Stoball, in August, 1945, executed a similar deed of his interest under the will to Prather, and on October 10, 1945, the remaining devisee, Fred Stoball, executed a similar deed to Prather. Each of the deeds provided that "the balance of the purchase price . . . it to be reduced to not more that forty per cent to compensate the grantee for his efforts in establishing said will". None of these deeds were filed for record in Franklin County until May 12, 1948.

In the meantime the widow, Rena Stoball, filed a bill of complaint in Cause No. 5299 in the Chancery Court of Franklin County against Prather, upon whom personal process was served, and against Elzie Stoball, a nephew and devisee of deceased, a resident of Louisiana, upon whom substitute process was obtained. The bill charged that Rena was the sole heir of Eph Stoball, that he died intestate, that she owned the seventy-six acres in Franklin County, that the two defendants were asserting some claim to the land, the exact nature of which was unknown to complainant; and complainant prayed that their claims be removed as clouds upon her title, which should be confirmed. Prather and Elzie Stoball appeared by their attorney and moved for time in which to answer, and on December 11, 1945, they were given until January, 1946, rules. On March 1, 1946, an order was executed, by consent of counsel of all parties, setting the case for final hearing on April 4, 1946. Defendants did not appear, and Rena Stoball moved for a decree pro confesso, which was granted on June 11, 1946. In that decree it was adjudicated that the defendants had failed to file any answer and that "all matters and facts and all allegations of the bill of complaint set forth therein be taken as confessed as against both defendants above named".

No final decree was taken upon that decree pro confesso, but that latter decree is still in effect and has not been set aside. When Prather was given additional time to answer the complaint, on December 11, 1945, he had already obtained from the three devisees in the will deeds to their interests. He did not file any pleading or answer setting up his claims, and wholly failed to comply with his duty to disclose them to the court.

Instead of answering in Cause No. 5299, Prather, on September 20, 1946, filed a petition, in Cause No. 4938-A, as the alleged agent for the three devisees, setting up that Eph Stoball had left a will and asking for its probate. The terms of the will were not disclosed, nor was a copy attached to the petition for probate. Another petition for probate of the will in the same cause was filed by Elzie Stoball on September 25, 1946, in which petition a copy of the will was set forth, but no affidavit of subscribing witnesses was attached until July 23, 1948. To this Rena Stoball filed an ''objection to probating will'', charging that the will had been revoked after her marriage to testator, and that he was not mentally competent when the will was made. No action was taken on these two petitions until July 24, 1948, when Archie Prather and the three devisees filed an amended petition for probate of the will in this same cause. Walter Mullins then intervened, and pleaded a void description of the property in the will, an implied revocation by deceased in his lifetime, that on February 27, 1946, Rena Stoball had conveyed to him all of her interest as Eph's sole heir for a consideration of $1,600 cash, and that Rena Stoball died on or about September 1, 1948. Mullins also pleaded that Prather had wrongfully kept the will and concealed its existence and terms for at least three years after testator's death until he could get deeds from the devisees, and that Prather was estopped to probate or claim under it.

This matter came on for trial at the September, 1949, term of the Chancery Court. Prather was the only witness for proponent of the will. The objectors to the

probate used eight witnesses, several of whom testified that Eph Stoball told the witness after his marriage that he wanted Rena to have all his property after his death; and that she was his only lawful heir. ██ ██ Much of the testimony was devoted in this way to undertaking to show an implied revocation of the will by testator. However, this evidence was improperly admitted. In Hilton v. Johnson, 1943, 194 Miss. 671, 12 So. (2d) 524, there was a similar factual situation, and the Court expressly held that under the Code of 1942, Sec. 658, providing for the method of revoking a will, parol testimony designed to show an implied revocation is not admissible. The doctrine of implied revocation has been carefully limited in Mississippi to the execution of conflicting deeds and other instruments. Hoy v. Hoy, 1909, 93 Miss. 732, 48 So. 903, 25 L. R. A., N. S., 182. Exclusion of such parol evidence of oral statements of testator is also necessary under the general rule of evidence. 2 Page, Wills, Secs. 871, et seq.; 57 Am. Jur., Wills, Sec. 456, 457. However, the admission of this evidence was harmless error because the case must be affirmed on another basis.

The chancellor in his opinion found as a fact that Prather, the sole appellant, had wrongfully retained the will, and that he was "trying to chisel the old woman out of her property". The trial court adjudicated that the will should not be admitted to probate. ██ ██ The decree is not clear. It could have been based upon estoppel or implied revocation. If the latter, we hold nevertheless that the trial court's decree should be affirmed because the decree reached the correct result, for reasons subsequently set forth.

The inequitable and fraudulent conduct of appellant and Mullins' change of position based upon Prather's actions precludes and estops him from probating this will. He is now the sole claimant under the will. Appellant wrongfully concealed the terms, if not the existence of this will, until Elzie Stoball filed his petition

for probate on September 25, 1946. He concealed this matter for more than three years after testator's death. Uncontradicted testimony of two witnesses for appellees was to the effect that Prather had offered to Mullins to destroy the will if Mullins could buy cheaply Stoball's property from his widow and let him, Prather, have forty acres of it on the same basis.

Prather wilfully failed to comply with his duty to reveal the existence and contents of the will with reasonable promptness to the widow and the devisees. On the contrary, he admitted that he only told the widow in mysterious terms that he had in his possession a will left by Stoball. He defrauded the widow, and he also defrauded the devisees. He refused to let them have the will, insisted on deeds, paid only a nominal consideration, and charged them forty per cent of the contingent purchase price for him, a subscribing witness, proving the will.

Prather himself testified that in 1945, when he was negotiating with the devisees for the purchase of their interests, that "Those boys came to my house after I contacted them, followed up, just like you followed it, I handed it to them, one took a hold of it. I would not turn it loose. I said 'There it is. If you ain't going to have it, give it away, that's your affair. If we can agree on a price, I'll buy it.' I put it if and when."

Moreover, Rena Stoball, the widow, sued him to remove any clouds on her title and obtained personal process. Prather never answered that bill in which it was charged that Eph Stoball died intestate, Rena was his sole heir, and that defendant was making some unknown claim to the property. The pro confesso decree held that these allegations were admitted. It is still in effect. No motion has been made to set it aside. The appellant held onto the will until he had obtained deeds from all of the devisees. He failed to comply with his duty to the court to reveal the facts.

In brief, Prather wrongfully withheld and concealed the terms of the will for at least three years during which time he had the will in his exclusive possession. He began immediately after Stoball's death to try to buy the devisees' interests, all the time concealing from others entitled to know the facts the terms of the will. He even concealed them from the court in Cause No. 5299, although when he obtained additional time in which to plead, he already had deeds from the three devisees in question. ██ █ As a matter of public policy and at common law a person in possession of a will, after testator's death, has a duty to produce and file it with the proper parties or court. Miss. Code, Sec. 497; 2 Page, Wills, Sec. 585. It is a crime in this state knowingly to secrete a will after the testator's death. Miss. Code, Sec. 2417. Appellant in effect admitted that he refused to turn the will over to the widow, and the devisees when he was negotiating for the purchase of their interests. He did not pay those grantors for their deeds more than a nominal consideration, exacted a substantial sum for proving the will, and offered to destroy the will if the land could be purchased cheaply from the widow.

On the other hand, Prather knew that Mullins was interested in buying the property. Mullins testified that Prather told him in the Spring of 1945 that he had a will of Stoball's in his possession, but that Prather never told him its terms. Mullins bought from Rena Stoball about a year after this conversation with Prather, and under these circumstances we think he was justified in assuming that, if Prather had a will of Eph Stoball, or at least a valid one, he would have turned it over to the widow or probated it. Mullins' attorney made a search of the public records, and found no will or deeds. Laches and estoppel are closely related, as are estoppel by delay and by silence or inaction. 19 Am. Jur., Estoppel, Secs. 38, 59. Estoppel may exist where based upon words, conduct, silence, or delay. All of them co-exist

here. Ibid., Sec. 85. When Mullins bought the land from Rena Stoball on February 27, 1946, Rena was in possession claiming it as sole heir. He paid her $1,600 for it. None of the deeds from the devisees to Prather were then of record, nor was Prather in possession. Nor had Prather filed any answer to Rena's bill asserting for himself any claim. And when the pro confesso decree was taken on June 11, 1946, Prather's apparent abandonment of any claim to the land evidenced thereby and whatever other effect that decree had inured to the benefit of Rena's grantee, Mullins.

Under all of these circumstances Mullins was not further obliged to insist on Prather producing a will in order for Mullins to qualify as a bona fide purchaser as against Prather. Whether Mullins would have been such as against the devisees if they had not conveyed their interests to Prather is not in issue here. Insofar as Prather and his interest is concerned Mullins was a bona fide purchaser for value of the property. Prather's wilful concealment of the will and its terms, and his failure to record his deeds from the devisees were the causes of the change of position by Mullins in reliance on the misleading, fraudulent, and wrongful acts of Prather. Prather is estopped under these facts from probating the will, and, since Prather claims the entire interest devised under the will, the estoppel extends to any rights which might accrue under it. The elements of equitable estoppel must be considered in the light of all the peculiar circumstances of this case, and of a balancing of the equities of the respective parties. As is said in 19 Am. Jur., Estoppel, Sec. 39, "the proper function of equitable estoppel is the prevention of fraud, actual or constructive . . . . the counter equities of the parties are entitled to due consideration".

This result is consistent with the cases which have dealt with this type of problem. 57 Am. Jur., Wills, Sec. 794, states the rule to be that ██ ██ "a person by his conduct may estop himself and his privies from

subsequently procuring probate of a will. An estoppel may be predicated upon long delay in propounding the will for probate during which property of the estate was transferred to subsequent purchasers for value and without notice of the will". In Dowd v. Dowd, 1941, 62 Idaho 631, 115 P. (2d) 409, 412, 135 A. L. R. 1213, there was no innocent purchaser involved. The Court applied this principle of estoppel to probate to a situation where the widow had originally concealed a will, obtained letters of intestate administration, and later sought to probate the will. Upon a contest by deceased's children, the Court held that the financial expenses which they had incurred in order to defend the precedent litigation, and the "mental disquietude and family disturbance" caused by the widow's concealment of the will constituted a sufficient change of position to support an estoppel. The Court said: "If one, who has destroyed a will, is estopped to thereafter resist probate thereof, it is difficult to see how one who deliberately withholds or conceals a will may thereafter be allowed to urge its probate." See also Annotation, 135 A. L. R. 1222. In re Swisher's Estate, 1945, 153 Kan. 401, 110 P. (2d) 765 involved a somewhat similar situation. The proponents of a will had concealed it from the probate court, and were estopped to probate it at a later time. The heirs had incurred financial expenses in defending the first lawsuit concerning an earlier will. This was considered sufficient change of position by them to support an estoppel.

Another reason why the decree of the chancery court must be affirmed is that a court of equity is a court of conscience, and nothing but good faith and reasonable diligence by Prather could call forth the exercise of equity's powers. Stated differently, he who comes into an equity court must come with clean hands. One cannot use the processes of that court when his conduct with respect to the transaction in question has been characterized by wilful inequity, illegality, and

fraud. Griffith, Miss. Chancery Practice (2d Ed., 1950), Secs. 32, 42. ▓▓ Appellant's actions since testator's death with reference to the will have deprived him of any equitable standing.

Affirmed.

PER CURIAM.

The above opinion is adopted as the opinion of the Court, and for the reasons therein stated, the case is affirmed.