WALKER, et al. *v.* WALKER, et al.

June 9, 1952.

No. 38388 (59 So. (2d) 277)

530

Guyton & Allen, for appellants.

**Rupert Ringold** and **A. M. Carothers**, for appellees.

**Kyle, J.**

This is a suit for the partition sale of land and timber owned by the surviving widow and the children of D. W. Walker, deceased, and for a determination of questions of title. The original petition was filed in the Chancery Court of Montgomery County on March 25, 1948, by John L. Walker, Mrs. Ginsey Walker, Mrs. Dolly Clark, Mrs. Mamie Lou Clark, Mrs. Nancy Palmertree and H. A. Walker, as petitioners, against James W. Walker, L. C. Walker, Durin (Judge) Walker, John Kelly Walker, and Mrs. Leona Phifer, as defendants.

The land and timber involved in this litigation consists of 118 acres of land in Section 21, Township 17 North, Range 7 East, in Montgomery County, including a 78-acre tract described as all of that part of the S½ of the SW¼ lying east of the Vaiden-French Camp road, less 12 acres off of the south side thereof, and the SW¼ of the SE¼ of Section 21, and also the 40-acre tract of land described as the NW¼ of the SE¼ of Section 21, and the timber on the 160 acres of land in Section 27, Township 17 North, Range 7 East, described as the W½ of the NW¼, and the SE¼ of the NW¼, and the NE¼ of the SW¼ of said Section, which constituted the homestead of D. W. Walker and his wife, Mrs. Ginsey Walker, at the time of the death of D. W. Walker in 1936.

In their petition the petitioners asked for the cancellation of a deed of conveyance of the 118 acres of land in Section 21, hereinbefore described, executed by John L. Walker, Mrs. Ginsey Walker, Durin Walker, J. W. Walker, L. C. Walker and Mrs. Nancy Palmertree to John Kelly Walker on November 8, 1947, insofar as John L. Walker and Mrs. Ginsey Walker were concerned, and for a determination of all questions of title to said land and for an adjustment of the equities between the parties, and for a sale of said land for a division of proceeds among the several cotenants according to their respective interests, and also for a sale of the merchantable timber on the 160 acres of land in Section 27 for a division of proceeds among the several cotenants.

John Kelly Walker filed an answer to the petition in which he averred that he had purchased on November 8, 1947, under a family agreement, the undivided interests of the other cotenants in the 118 acres of land in Section 21, Township 17 North, Range 3 East, described in the bill of complaint, and that he had paid to J. W. Walker, Durin Walker, L. C. Walker and Mrs. Nancy Palmertree their pro rata parts of the purchase price, and had delivered to Mrs. Ginsey Walker a check for $472.72 for her interest in the 118 acres, and that he had deposited in a special account in the Bank of Kilmichael the sum of $2,836.32, which was the amount necessary to pay the other cotenants for their interests in the 118 acres of land; and with his answer he tendered into court said sum of money in payment of the amount due the cotenants who had not been paid for their interests in the 118 acres. And John Kelly Walker denied that the petitioners were entitled to have the deed, dated November 8, 1947, cancelled or to have the 118 acres of land in Section 21 sold for a division of proceeds.

John Kelly Walker admitted in his answer that Mrs. Ginsey Walker was the owner of an undivided 12/22nds interest in the 160 acre tract of land in Section 27, Township 17 North, Range 7 East, which was occupied by

D. W. Walker and his wife, Mrs. Ginsey Walker, as a homestead, at the time of the death of D. W. Walker in 1936, and that each of the children was the owner of an undivided 1/22nds interest in said land, not including, however, the timber on said land; but he averred in his answer that Mrs. Ginsey Walker had conveyed her entire interest in said land to Horton A. Walker by deed dated October 23, 1939, reserving to herself, however, a life estate in said land.

As to the timber on the 160 acre homestead tract, John Kelly Walker stated in his answer that he had in his possession a timber deed signed by J. W. Walker, dated December 6, 1934, wherein for a stated consideration of $500 J. W. Walker had conveyed to D. W. Walker all of the merchantable timber on the W½ of NW¼, and the SE¼ of the NW¼ and also the NE¼ of the SW¼ of Section 27; that two lines had been drawn through the words and figures, "W½ of NW¼", indicating that said 80-acre tract had been deleted, or that an attempt had been made to delete the same from the instrument; and that said instrument had not been acknowledged and could not be recorded, but that the instrument itself would be produced at the hearing; and a copy of the instrument was filed with the answer. He stated in his answer that, if the court should hold that the above mentioned timber deed was valid, then and in that event the said D. W. Walker died seized and possessed of the timber on that part of the land embraced in said instrument, and all of the heirs of D. W. Walker, including his widow, Mrs. Ginsey Walker, inherited from him an undivided 1/11th interest each in said timber.

John Kelly Walker in his answer averred that the interest of all of the parties in the timber on the 118 acres of land in Section 21, which he had purchased under the family agreement on November 8, 1947, passed to him by virtue of the deed of conveyance dated November 8, 1947. He admitted that the court had jurisdiction to hear and determine the questions pre-

sented in the original petition, but denied that the petitioners had any right to demand a sale of the 118 acres of land in Section 21 for the reasons above stated. By leave of court he later filed a cross bill in which he sought to have the court establish in his favor a resulting trust as to the timber on the homestead tract, to secure the repayment to him of money advanced by him to J. W. Walker in 1924 to enable J. W. Walker to purchase the land at a foreclosure sale made by the Federal Land Bank.

There is very little real conflict in the testimony of the witnesses. The record shows that D. W. Walker acquired title to the above mentioned lands prior to 1918, and that some time during that year he and his wife, Mrs. Ginsey Walker, executed a deed of trust to the Federal Land Bank on the land described as the NW¼ of SE¼ of Section 21, and the 160 acres of land in Section 27, which constituted the homestead of D. W. Walker and his wife, and two other 80 acre tracts of land which D. W. Walker owned at that time, to secure indebtedness owing by them to the Federal Land Bank; that default was made in the payment of the indebtedness; and that the Federal Land Bank in 1924 had the lands advertised and sold for the payment of the indebtedness. At the time of the foreclosure sale J. W. Walker and his brother, John Kelly Walker, were living in Texas. After the advertisement of the sale appeared in the newspaper D. W. Walker notified J. W. Walker that the trustee had advertised the lands for sale, and J. W. Walker returned to Mississippi for the purpose of bidding on the lands at the sale and became the purchaser of the lands at the sale, and the trustee conveyed the lands to him. The amount paid by J. W. Walker for the lands at the trustee's sale was approximately $1,150; and according to the allegations of John Kelly Walker's cross bill, John Kelly Walker advanced the money to J. W. Walker to enable J. W. Walker to pay for the lands at the foreclosure sale.

At the time of the purchase of the lands by J. W. Walker at the foreclosure sale, it appears that there was an understanding between him and his father and mother that he would get his money back out of the timber on the lands, and that he would then reconvey the lands to his father and mother. And on January 8, 1926, J. W. Walker did reconvey to D. W. Walker and his wife, Mrs. Ginsey Walker, the lands which he had purchased at the foreclosure sale, but in the deed of conveyance he reserved to himself "all timber on said lands, with right of ingress and egress for the purpose of cutting, hauling, storing, and the right to build sawmills, roads, planing mills, and everything that is necessary to prepare same for the market." The consideration recited in the deed of conveyance was $1,167.70. According to the testimony of John L. Walker, J. W. Walker thereafter operated a sawmill on the 160 acre tract in Section 27 and cut the timber on all of that tract except about 40 acres. J. W. Walker also cut the timber on the 40 acres in Section 21, which he had reserved under the above mentioned deed.

John Kelly Walker produced at the trial and identified a timber deed which had been executed by J. W. Walker to D. W. Walker in 1934, and which had been mentioned in the answer filed by John Kelly Walker. The instrument referred to is as follows:

"State of Mississippi

"Montgomery County.

"In consideration of Five Hundred Dollars ($500.00) cash in hand paid, receipt of same is hereby acknowledged, I warrant and convey to D. W. Walker all the merchantable timber in the following lands, to-wit:

"W½ of NW¼ and SE¼ of NW¼ and also N NE¼ of SW¼ Section 27, Township 17, Range 7, located and situated in the County of Montgomery, State of Mississippi.

"J. W. Walker

"Sworn to and subscribed before me this the 6th day of Dec. 1934.

"(Seal) Tom Townsend
 "Mayor & Ex Officio J. P."

It appears from the testimony that the letter "W", immediately before the figure "½", and the letters "NW", immediately before the figure "¼", and the letter "N", before the letters and figure "NE¼", in the above mentioned instrument, had been scratched out. The instrument had never been filed for record, but was in the possession of John Klelly Walker when the suit was filed. The instrument was offered in evidence. John Kelly Walker testified that he got it from his father, and he stated that he was present when J. W. Walker signed the instrument. John L. Walker also testified that the signature to the instrument was the signature of J. W. Walker, and that he was present in the old bank at Kilmichael when the instrument was prepared by Tom Townsend and when J. W. Walker delivered the paper to his father. No proof was made as to whether the alterations in the instrument were made before or after the execution of the instrument.

D. W. Walker died in 1936, and left surviving him as his only heirs his wife, Mrs. Ginsey Walker, and ten children, all of whom are parties to this suit. The 78 acre tract of land in Section 21, which included a fractional part of the S½ of the SW¼, and the SW¼ of the SE¼, of Section 21, had not been included in the Federal Land Bank deed of trust, and was still owned by D. W. Walker at the time of his death, and the legal title to that part of the 118 acres hereinabove mentioned, at the death of D. W. Walker, passed to his wife and the ten children as tenants in common, in equal parts. The remaining 40 acres of the 118 acres in Section 21 and the 160 acres in Section 27, which constituted the homestead of D. W. Walker and his wife, at the time of the death of D. W. Walker, were owned by D. W. Walker and his wife

as tenants in common under the deed from J. W. Walker, dated January 8, 1926, subject to the provisions of the timber reservation contained in the deed from J. W. Walker dated January 8, 1926, and the provisions of the above mentioned timber deed from J. W. Walker to D. W. Walker dated December 6, 1934. After the death of D. W. Walker, Mrs. Walker therefore owned an undivided 1/11th interest in the above mentioned 78 acre tract of land in Section 21, and each of the children owned an undivided 1/11th interest in said 78 acre tract. And after the death of D. W. Walker, Mrs. Walker owned an undivided 12/22nds interest in the remaining 40 acres in Section 21 and an undivided 12/22nds interest in the 160 acres in Section 27; and each of the children was the owner of an undivided 1/22nd interest in said remaining 40 acres in Section 21 and an undivided 1/22nd interest in the 160 acres in Section 27, subject to Mrs. Ginsey Walker's homestead rights in the 160 acres in Section 27, and subject to the provisions of the above mentioned timber reservation and timber deed.

On October 30, 1939, Mrs. Ginsey Walker conveyed to her son, Horton A. Walker, all of her interest in all of the above described lands, reserving to herself, however, a life interest in the same.

On November 4, 1947, John L. Walker obtained a deed from Mrs. Ginsey Walker, Dolly Clark, Mamie Lou Clark and Leona Phifer, conveying to him their interests in the above mentioned 78-acre tract of land and the 40-acre tract of land described as the NW¼ of the SE¼, in Section 21, for the sum of $300 each. The deed was not filed for the record until after this suit was instituted. No part of the purchase price was actually paid by John L. Walker to the above named parties, but John L. Walker executed a note and a deed of trust therefor.

The other parties were unwilling to sell their interests in the above mentioned 118 acres of land to John L. Walker for the above stated price. John L. Walker testified that "Landy, Jim, Judge and Nancy didn't

sign my deed, and Kel—he didn't sign it either.'' The last named parties, according to the testimony of John L. Walker and according to the testimony of John Kelly Walker, wanted to put the land up for sale to the highest bidder; and the land was then offered for sale to the highest bidder among the members of the family at the old Robertson house seat on November 8, 1947. L. C. Walker served as auctioneer and bid $5,000; John L. Walker then bid $5,100; and finally, John Kelly Walker bid $5,200; and it was agreed that Kelly should have the land at that price. The next day John Kelly Walker had a deed prepared, and J. W. Walker, Durin Walker, L. C. Walker, John L. Walker, Mrs. Nancy Palmertree and Mrs. Ginsey Walker signed and acknowledged the deed before a justice of the peace. The consideration recited in the deed was $500. But the actual consideration to be paid by John Kelly Walker for each interest was $472.72, the parties having agreed that Mrs. Walker and each of the children should have a 1/11th part of the purchase price. John Kelly Walker immediately paid to J. W. Walker, Durin Walker, L. C. Walker and Mrs. Nancy Palmertree the sum of $472.72 each as their parts of the purchase price; a check for a similar amount was issued to Mrs. Ginsey Walker, but that check had not been deposited for collection at the time of the trial.

Horton A. Walker was in the Veterans' Hospital at Jackson at the time of the auction sale; and on November 24, 1947, John L. Walker obtained a deed from Horton A. Walker by which Horton A. Walker conveyed to John L. Walker all of his interest in the above mentioned 118 acres of land for the sum of $300. The proof showed that no part of the $300, which was recited as the consideration in the deed, had been paid to Horton A. Walker at the time of the trial.

John Kelly Walker testified that, after he had paid to J. W. Walker, Durin Walker, L. C. Walker, Mrs. Nancy Palmertree and Mrs. Ginsey Walker, their 1/11th parts of the purchase price of $5,200, he deposited the funds

to be used in paying for the remaining shares in the Bank of Kilmichael, and for that reason he had not paid John L. Walker for his share and the other shares to which John L. Walker had obtained a deed was that he had been unable to determine whether he owed John L. Walker for four shares or one share, and that John L. Walker had not delivered to him the deed of conveyance of the other interests for which payment was to be made.

At the conclusion of the hearing the chancellor found that John Kelley Walker was the owner of the entire interest in the 118 acres of land in Section 21, which the petitioners sought to have sold for a division of proceeds among the parties as tenants in common, and the chancellor held that none of the other parties had any interest in the 118 acres. The chancellor also held that the timber deed executed by J. W. Walker to D. W. Walker on December 6, 1934, was ineffective for the reason that alterations made in the timber deed had not been properly accounted for, and that J. W. Walker was the sole owner of all the timber standing on the 160-acre tract in Section 27, by virtue of the reservation contained in the deed dated January 8, 1926, and that no other person had any interest in said timber. And the chancellor denied the relief prayed for by the petitioners. The chancellor also found that the proof was insufficient to justify the court in holding that a resulting trust had been created in favor of John Kelly Walker covering any of the property involved in the suit, because of the alleged advancement of money by John Kelly Walker for the payment of the purchase price of the lands at the foreclosure sale in 1924; and the chancellor dismissed the original petition, and also the cross bill filed by John Kelly Walker. From that decree the petitioners prosecute this appeal, and John Kelly Walker also prosecutes a cross appeal.

The appellants argue three main points on this appeal, viz.: (1) That the chancellor erred in holding that whatever title John L. Walker acquired by and through the

deed from Horton A. Walker to him dated November 24, 1947, inured to the benefit of John Kelly Walker under the deed executed to him by John L. Walker and others on November 8, 1947, and in holding that John Kelley Walker was the sole owner of the 118 acres of land in Section 21, and that none of the other parties had any interest in said land; and (2) that the chancellor erred in holding that the instrument of writing dated December 6, 1934, and signed by J. W. Walker, and purporting to convey to D. W. Walker all of the timber on the 160 acres of land in Section 27, was void, and in refusing to recognize said instrument as a valid conveyance of said timber to D. W. Walker, and in holding that J. W. Walker was the sole owner of the timber on the 160 acres of land in Section 27; and (3) that the chancellor erred in holding that at the time of the signing of the deed of November 8, 1947, by John L. Walker and others, it was the understanding of all the parties that each of the parties to this suit would receive 1/11th part of the $5,200 purchase price, and in directing the clerk to pay to each of the parties who have not already been paid the sum of $472.72 out of the money paid into court by John Kelly Walker for distribution among them as their proportionate parts of the purchase price of $5,200.

John Kelly Walker, as cross appellant, also filed an assignment of error in which he contends that the chancellor erred (1) in holding that J. W. Walker was the owner of the timber on the 160 acres of land in Section 27, which constituted the homestead of D. W. Walker and his wife at the time of the death of D. W. Walker; (2) in denying the prayer of John Kelly Walker's cross bill in which he asked that a resulting trust in the timber on said land be established in his favor; and (3) in holding that the testimony of J. W. Walker and three other witnesses, taken on the prior hearing of the claim of Mrs. Rosa Mae Walker, the divorced wife of J. W. Walker, to an undivided one-half interest in the timber, could

not be considered by the court in disposing of the issues presented in John Kelly Walker's cross bill.

 We think that the chancellor was justified in his finding that John L. Walker and his copetitioners were bound by the terms of the family agreement for the sale of the 118 acres of land to John Kelly Walker on November 8, 1947, for the sum of $5,200. John L. Walker at the time that agreement was entered into had already obtained a deed from Mrs. Dollie Clark, Mrs. Mamie Lou Clark, Mrs. Leona Phifer and Mrs. Ginsey Walker, conveying to him all of their undivided interest in the 118 acres of land. █ John L. Walker had been a party to the family agreement and had actively participated in the auction sale, which had resulted in the land being struck off to John Kelly Walker for the sum of $5,200; and John L. Walker and Mrs. Ginsey Walker had signed the deed of conveyance which had been prepared for the purpose of vesting title to the land in John Kelly Walker. It was after these things had happened that John L. Walker obtained a deed from Horton A. Walker, conveying to him all of the undivided interest of Horton A. Walker in the 118 acres of land.

In holding that whatever title John L. Walker acquired under the deed from Horton A. Walker to him, dated November 24, 1947, inured to the benefit of and passed to John Kelly Walker by virtue of the deed executed by John L. Walker to John Kelly Walker on November 8, 1947, we do not understand that the chancellor rested his decision upon the doctrine of "after acquired property." But the chancellor held, and we think correctly, that John L. Walker, after making himself a party to the family agreement for the sale of the land to John Kelly Walker for the price of $5,200, to be divided equally among the heirs of D. W. Walker, was estopped from acquiring immediately thereafter the share of Horton A. Walker and attempting to hold the same against John Kelly Walker in contravention of the family agree-

ment. Horton A. Walker, so far as this record shows, was not bound by the family agreement; but John L. Walker, his vendee, was bound by the family agreement, and was estopped by his conduct from acquiring the interest of Horton A. Walker and seeking to interpose that interest as a barrier against John Kelly Walker's acquisition of the full title to the 118 acres of land. 19 Am. Jur. p. 784, Estoppel, Par. 130, 131.

The consummation of an agreement may estop a party to the agreement from asserting a claim inconsistent therewith. 31 C. J. S., Estoppel, Sec. 108 p. 343.

In the case of Staton v. Bryant, 55 Miss. 261, this Court expressly recognized the doctrine of estoppel by conduct, and stated that, ''The principle on which the doctrine of estoppel by conduct rests is that it would be a fraud in a party to assert what his previous conduct had denied, when on the faith of that denial, others have acted.'' In the case of Young v. Adams, 122 Miss. 1, 84 So. 1, the Court held that a vendor of standing timber, who participates in, agrees to, and acquiesces in the assignment of a timber contract by the vendee to a third party, is estopped to assert its nonassignability. The principle applied in the above mentioned cases was also applied in the cases of Izard v. Mikell, 173 Miss. 770, 163 So. 498; Peeler v. Hutson, 202 Miss. 837, 32 So. (2d) 785; In re Stoball's Estate, 211 Miss. 15, 50 So. (2d) 635.

The chancellor was justified in holding that John L. Walker had acted in bad faith in procuring a deed from Horton A. Walker for his interest in the land a few days after John Kelly Walker had purchased the land under the family agreement, and in holding that John Kelly Walker was entitled to the Horton A. Walker interest which John L. Walker had purchased after John L. Walker had signed the deed to John Kelly Walker.

We think that the chancellor was in error, however, in holding that the timber deed from J. W. Walker to D. W. Walker dated December 6, 1934, was

void, and in holding that J. W. Walker was the sole owner of all the timber standing on the 160 acres of land in Section 27, referred to as the homestead tract, and that no other person had any interest in said timber.

John L. Walker and John Kelly Walker both testified that J. W. Walker executed the timber deed on December 6, 1934, when he and his father were in the bank at Kilmichael; and Mrs. Ginsey Walker testified that her husband brought the deed home that evening, and told her that "it was a deed Jim had made to him for the timber", and requested her "to put the deed up". She stated that the deed later disappeared, and that she did not know who got it. It is true that the timber deed was not acknowledged properly and could not be recorded, but the proof shows that the deed had been properly signed and delivered by J. W. Walker to D. W. Walker. It was not necessary that the deed be recorded to make it effective between the parties. The deed was a valid deed and constituted a valid conveyance to D. W. Walker of the timber then owned by J. W. Walker on the land in the SE¼ of the NW¼ and the NE¼ of the SW¼ of Section 27. ■■ ■ The fact that the words and figures "W½ of the NW¼" originally written in the instrument had been deleted did not affect the validity of the instrument as a deed of conveyance of the timber on the two remaining 40-acre tracts. There was no proof to show that the deed had been altered after it was executed and there was no legal presumption that the words and figures "W½ of the NW¼" had been stricken out after the deed was delivered to D. W. Walker. As stated by this Court in the case of Scott v. Perry, 140 Miss. 452, 106 So. 12, 13, "Except in the case of negotiable paper, which is recognized in this state as an exception to the rule, the general presumption is in favor of honesty and fair dealing in all transactions and against the imputation of fraud, and one who assails a deed on account of erasures or interlineations therein

has the burden of showing that the erasures or interlineations were made after the execution of the deed."

The timber conveyed to D. W. Walker, however, in the above mentioned timber deed was only the timber still remaining on the land that was on the land at the time of the execution of the deed of conveyance from J. W. Walker to D. W. Walker and his wife, Mrs. Ginsey Walker, on January 8, 1926. Overby v. Burnham, 190 Miss. 435, 200 So. 591. The timber that had grown on the land subsequent to January 8, 1926, was not included in the reservation and was not owned by J. W. Walker on December 6, 1934, and did not pass to D. W. Walker under the timber deed dated December 6, 1934. Robertson, State Revenue Agent, v. H. Weston Lumber Co., 124 Miss. 606, 87 So. 120, 124; Overby v. Burnham, supra. Mrs. Ginsey Walker who was named as one of the grantees in the deed dated January 8, 1926, was the owner at the time of the death of D. W. Walker of an undivided one-half interest in the timber that had grown on the land subsequent to January 8, 1926; but she was not named as a grantee in the timber deed dated December 6, 1934, and consequently, acquired no interest in the timber conveyed by J. W. Walker to D. W. Walker in that deed.

After the death of D. W. Walker, Mrs. Ginsey Walker and each of the children were therefore the owners of an undivided 1/11th interest in the timber on the two 40-acre tracts of land described as the SE¼ of the NW¼ and the NE¼ of the SW¼ of Section 27, which had been conveyed to D. W. Walker by J. W. Walker on December 6, 1934, and J. W. Walker was the owner of the timber on the W½ of the NW¼ of Section 27, which had been reserved by him in the deed dated January 8, 1926, if there was in fact any such timber still standing on the land at the time of the death of D. W. Walker. But the reservation contained in the deed dated January 8, 1926, as stated above, did not cover the timber that had grown on the land subsequent to January

8, 1926. And, after the death of D. W. Walker, Mrs. Ginsey Walker was the owner of an undivided 12/22nd interest in the timber on the entire 160 acres in Section 27 that had grown on the land, or had become "timber", subsequent to January 8, 1926, and each of the children was the owner of an undivided 1/22nd interest in said timber. Overby v. Burnham, supra.

No mention was made in the original petition of the deed of Mrs. Ginsey Walker to Horton A. Walker, dated October 30, 1939, in which Mrs. Ginsey Walker conveyed to Horton A. Walker all of her interest in the 160 acres of land in Section 27 and other property described therein, reserving to herself, however, a life interest in said property. But a copy of the deed was attached to the answer of John Kelly Walker, and Mrs. Ginsey Walker testifiied that she had executed the deed in 1939. If a sale of the timber on the land in Section 27 should be ordered, and the cause will be remanded to the lower court for that purpose, it will be necessary for the chancellor to determine the value of the homestead interest and the life estate of Mrs. Ginsey Walker in the timber, so that a proportionate part of the proceeds of the sale of the timber can be paid over to her according to the value of her interest.

The appellants' attorneys contend in their brief that the chancellor erred in holding that at the time of the signing of the deed of conveyance of the 118 acres of land to John Kelly Walker on November 8, 1947, it was the understanding of all of the parties that Mrs. Ginsey Walker and each of the children should receive a 1/11th part of the $5,200 purchase price, and in directing the clerk to pay to each of the parties who had not already been paid the sum of $472.72 out of the money paid into court by John Kelly Walker; and in their argument the appellants' attorneys say that the decree of the court "compels John L. Walker to pay over to his grantors whatever 'bargain' he got out of his purchases" of their interests. But the answer to this contention

is that John L. Walker was a party to the auction sale agreement, and John L. Walker, John Kelly Walker and L. C. Walker all testified that it was understood and agreed by and between all of the parties who participated in the auction sale agreement that the money would be divided into eleven equal parts, and that Mrs. Ginsey Walker and each of the children would get a 1/11th part of the $5,200. John L. Walker was asked the direct question, "That is what you agreed on, wasn't it?" and his answer was, "Yes, Sir." The chancellor was therefore justified in holding that under the agreement each of the parties should receive a 1/11th part of the $5,200 purchase price, and in directing the clerk to pay to each of the parties who had not already been paid the sum of $472.72 out of the money paid into court.

The appellee's attorneys argue on their cross-appeal that the court erred in denying the relief prayed for in John Kelly Walker's cross bill. But we think that there was no error in the chancellor's refusing to grant the relief prayed for in the cross bill. More than twenty-five years had passed since John Kelly Walker had made the advancements of money to J. W. Walker to enable J. W. Walker to purchase the lands owned by D. W. Walker at the Federal Land Bank foreclosure sale. Two years after purchasing the lands at the foreclosure sale J. W. Walker had reconveyed the lands to his father and mother, reserving to himself the timber on the lands. John Kelly Walker during the next succeeding years stood by and saw J. W. Walker cut and remove much of the timber from the lands and then reconvey to his father the balance of the timber on a part of the 160-acre tract of land in Section 27, and apparently made no effort at that time to have J. W. Walker reimburse him for the amount of money that he had advanced to J. W. Walker to enable him to purchase the lands at the foreclosure sale. If the loan had not been repaid by J. W. Walker during that time, it is reasonable to assume that John Kelly Walker had waived his claim for repayment, or

that he intended to treat the advancement as a gift to his father and mother. But whatever the facts may be, we think that the chancellor was justified in holding that the facts alleged and proved were insufficient to establish a resulting trust, or a lien against the timber, in favor of John Kelly Walker, to secure the repayment of the loan.

The decree of the lower court will therefore be affirmed as to that part of the decree in which the chancellor held that whatever title John L. Walker acquired by the deed to him from Horton A. Walker, dated November 24, 1947, inured to the benefit of and passed to John Kelly Walker under the deed executed to him by John L. Walker and others on November 8, 1947, and that John Kelly Walker was the owner of the entire interest in the 118 acres of land in Section 21, and that no other parties to this suit have any interest whatever in the above mentioned 118 acres of land; and the decree of the lower court will be affirmed as to that part of the decree which holds that at the time of the execution of the deed from John L. Walker and others to John Kelly Walker, on November 8, 1947, it was the understanding of the parties that Mrs. Ginsey Walker and each of the children should receive a 1/11th part of the $5,200 purchase price, and directs that the $2,836.32 deposited by John Kelly Walker with the clerk of the court be paid to John L. Walker, Mrs. Ginsey Walker, Mrs. Dolly Clark, Mrs. Mamie Lou Clark, Mrs. Leona Phifer and H. A. Walker, each to be paid the sum of $472.72. And the payments thus ordered shall be made by the clerk of the lower court to the above named parties within ten days after the filing of the mandate of this court in the court below.

The decree of the lower court will be reversed as to that part of the decree holding that J. W. Walker is now the sole owner of all of the timber now standing on the above mentioned 160 acres of land in Section 27, and that no other person has any interest in said timber, and that no effect can be given to the timber deed executed by J. W. Walker to D. W. Walker on December 6, 1934,

and denying the prayer of the petitioners for a partition sale of the timber; and the cause will be remanded to the lower court for a proper determination of the rights and interests of the several parties in said timber according to the hólding of this Court as set forth above, and for further hearing upon that part of the petition asking for a partition sale of the timber on said 160 acres of land in Section 27.

It will be necessary for the court to hear additional testimony as to the approximate quantity and value of the timber still remaining on the land that is subject to the reservation in the deed from J. W. Walker to D. W. Walker and Mrs. Ginsey Walker, dated January 8, 1926, and as to the relative value of that timber as compared with the value of the timber that has grown on the land, or has become timber, since January 8, 1926, in order that a proper distribution of the proceeds of the sale may be made among the several parties in interest according to their respective interests. As stated by this Court in the case of Overby v. Burnham, supra, we appreciate the difficulty confronting the parties in regard to making the proof of the facts as to the quantity, sizes, and value of timber still standing on the land that was "timber" on January 8, 1926, and the quantity, value and sizes of the timber that has grown on the land, or has become "timber" since January 8, 1926. The parties in interest may be able to reach an agreement as to these quantities and values. But if no such agreement is made it will be necessary for the court to determine the facts from the best evidence obtainable.

That part of the decree of the lower court in which the chancellor denied the relief sought in John Kelly Walker's cross bill is affirmed.

Affirmed in part on direct appeal and cross appeal, reversed in part on direct appeal and cross appeal and remanded.

**McGehee, C. J.,** and **Hall, Holmes** and **Ethridge, JJ.,** concur.

ON SUGGESTION OF ERROR.

July 17, 1952, (59 So. (2d) 848)

**Hall, J.**

The suggestion of error insofar as the same pertains to the merits of the case is hereby overruled. That part of the suggestion of error which deals with the apportionment of appeal cost is treated as a motion to correct the judgment and the same is sustained and the appeal cost will be taxed two-thirds against the appellants and one-third against the appellee, John Kelly Walker.

All Justices concur.