# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-CT-01133-SCT

*IN THE MATTER OF THE LAST WILL AND TESTAMENT OF MAZIE WILCHER, DECEASED: LONNIE FAULKNER, ZACHARY FAULKNER AND BENJAMIN FAULKNER*

*v.*

*THOMAS KARL WILCHER, EXECUTOR OF THE ESTATE OF MAZIE WILCHER, DECEASED, AND CONNIE WILCHER*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 06/08/2006 |
| TRIAL JUDGE: | HON. WILLIAM JOSEPH LUTZ |
| COURT FROM WHICH APPEALED: | LEAKE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | ROBERT LOUIS GOZA |
| | SAMUEL SUTHERLAND GOZA |
| ATTORNEYS FOR APPELLEE: | ALAN D. RHEA |
| | DEXTER C. NETTLES |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | REVERSED AND REMANDED - 11/06/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     Thomas Karl Wilcher, executor of the estate of Mazie Wilcher, and Connie Wilcher brought suit to set aside and cancel a deed conveying real property from Connie Wilcher to Lonnie Faulkner, Zachary Faulkner, and Benjamin Faulkner.  The Leake County Chancery Court granted summary judgment in favor of Thomas Karl Wilcher, thereby setting aside the

conveyance. On appeal, this case was assigned to the Court of Appeals, which affirmed the trial court's grant of summary judgment. After the Court of Appeals denied the Faulkners' motion for rehearing, the Faulkners filed a petition for writ of certiorari, which this Court granted. Upon consideration, we reverse the judgments of the Court of Appeals and the Chancery Court and remand this case to the Chancery Court of Leake County for further proceedings consistent with this opinion.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2. Mazie Wilcher (Mazie), a widow, died in 1991, leaving a twelve-acre tract of real property located in Leake County. Mazie had inherited this property from her father. Mazie was survived by her daughter, Connie Wilcher (Connie), who is her only child and sole heir-at-law under the laws of descent and distribution in this state. Mazie and Connie occupied the property as their homestead for many years. After her mother's death, Connie, who is handicapped, continued to reside on the twelve acres with the help of other individuals, including Thomas Karl Wilcher, until December 2002, when she was confined to a nursing home.[1] A short time later, a warranty deed dated January 4, 2003, was filed in the Leake County Chancery Clerk's office on January 6, 2003, and recorded in Book 268, at Page 257. This deed purportedly bore Connie's signature and conveyed the twelve acres to Lonnie Faulkner, Zachary Faulkner, and Benjamin Faulkner (the Faulkners)[2] as joint tenants with

---

[1]The extent or nature of Connie's handicap is not explained.

[2]Connie's first cousin, Hilda Denne, is the mother of Lonnie and the grandmother of Zachary and Benjamin. Hilda's father (Lester Walton) and Mazie were brother and sister.

full rights of survivorship, reserving a life estate in Connie. The deed reflected that the consideration paid was $10,799, and the deed likewise contained the following language:

> Connie Wilcher is the sole surviving heir-at-law of her mother, Mazie Wilcher, who died intestate <u>Jan. 1, 1991</u>. Mazie Wilcher acquired said property by the Last Will and Testament of her father, H. G. Walton, dated September 16, 1939, recorded in Will Book 3, Page 230, and probated in cause No. 5163 in the Chancery Court of Leake County, Mississippi. H. G. Walton acquired said property by deed from L. I. Walton, et ux, dated January 20, 1938, recorded in Book 43, Page 208, records of the Leake County Chancery Clerk's Office.

¶3. Thomas Karl Wilcher (Thomas Karl)[3] became aware of the existence of the deed and objected, stating that Connie was of advanced age and did not have the capacity to sign the deed. Less than a month later, by deed dated January 31, 2003, the property was conveyed back to Connie for the same dollar amount. This deed was filed in the Leake County Chancery Clerk's office on January 31, 2003, and recorded in Book 268, at Page 604. Alvin Roy Wright, Jr., the attorney who drafted the deed, asked the Faulkners to reconvey the property to Connie after Thomas Karl and Katherine Wilcher alleged that Connie did not have the capacity to sign the deed, accused him (Wright) of committing fraud, and threatened to sue him. On February 6, 2003, the first deed of conveyance from Connie to the Faulkners was again filed in the Leake County Chancery Clerk's office and recorded in Book 268, Page

Mazie was Hilda's aunt, Lonnie's great aunt, and Zachary and Benjamin's great, great aunt.

[3]Thomas Karl's father and Mazie's husband, Jimmy, were first cousins; therefore, Connie and Thomas Karl are cousins.

701. However, the signature line of the deed had been altered.[4] The Faulkners took title to the real property without a title examination and allegedly, they were unaware of Mazie's unprobated will. The Faulkners assert, however, that both Thomas Karl and Connie had actual knowledge of the existence of the will and its provisions. Also, the Faulkners state that they relied on the ad valorem tax receipts from 1992 through 2002, on file in the Leake County Courthouse, which revealed that the property was assessed to Connie as the owner.

¶4. Shortly thereafter, on February 18, 2003, Thomas Karl filed a petition to probate the Last Will and Testament of Mazie Wilcher. The will was admitted to probate and Letters Testamentary were issued to Thomas Karl. In the will, the subject land was left to Thomas Karl as trustee and remainderman, with a life estate to Connie.[5] As executor of the Estate, Thomas Karl filed a complaint against the Faulkners to set aside the deed. Connie

---

[4] Connie's signature purportedly appears on the first deed. The altered final deed had an "X" on the signature line. Other discrepancies include the following: The first deed had a date of January 4, 2003, and contained the purported signatures of Margaret Phillips and Martha Beckham as witnesses; whereas the final deed had a date of February 6, 2003, and contained the purported signatures of Kevin Horne and Margaret Phillips as witnesses. The record provides no explanation for these discrepancies. The first deed (Connie-to-the-Faulkners) and the second deed (the Faulkners-to-Connie) were notarized by Wright, while the third deed (Connie-to-the-Faulkners) was notarized by Dot Merchant, the Leake County Chancery Clerk.

[5] Item Two of the will provided, *inter alia*, that "I appoint Thomas Karl Wilcher, as Trustee, to see after the property I have devised to [Connie], and to use it for her sole use and benefit. He is to see that [Connie's] needs are provided for, and if it is necessary to sell any of the property I leave at my death to pay for her maintenance and living expenses and her medical or nursing or hospital bills, then he shall have the right to do so." Item Three of the will provided that the devise of the real property was for Connie's life, and if any remained after Connie's death, such remaining property would go to Thomas Karl, absolutely and in fee simple.

subsequently joined as a plaintiff to this cause, alleging that she was subject to undue influence due to her mental and physical condition; that she was not able to read and understand the documents with which she was presented to execute; and that she was not provided an opportunity to obtain independent legal counsel. Additionally, Thomas Karl and Connie contend that the Faulkners took advantage of Connie's weakened state by waiting until she was confined to a nursing home to have her secretly convey the property to them.

¶5.    After discovery and a hearing, the Chancery Court of Leake County, Chancellor William Joseph Lutz presiding, granted summary judgment in favor of Thomas Karl and the Estate. The chancellor found that, since there was a break in the chain of title, Connie did not own the property and therefore, could not convey it to the Faulkners. The chancellor further found that the Faulkners were on notice of a possible break in the chain of title, and in order for the real property to be marketable, either an estate must have been opened or an adjudication of heirship must have taken place prior to the property being deeded. The Faulkners timely appealed from the chancery court's judgment, and we assigned this case to the Court of Appeals.

## PROCEEDINGS IN THE COURT OF APPEALS

¶6.    The Faulkners raised six issues before the Court of Appeals, which we restate as follows: (1) whether the death of Mazie Wilcher created a gap in the title; (2) whether the Faulkners are precluded from being innocent purchasers as a matter of law; (3) whether the trial court erred in precluding a trial on affirmative defenses; (4) whether it was error to preclude the affirmative defenses of laches and estoppel; (5) whether it was error to preclude

5

the affirmative defenses under the equitable maxims requiring clean hands and the duty to do equity when seeking equity; and (6) whether the trial court erred in not ordering the return of the purchase price. The Court of Appeals addressed the first five issues in the ultimate question of whether the trial court erred by granting summary judgment against the Faulkners, thereby setting aside and canceling the conveyance. The Court of Appeals declined review of the sixth issue "because the issue of the Faulkners' reimbursement for the purchase price was never brought before the lower court. . . ." *Faulkner v. Wilcher*, 2007 Miss. App. LEXIS 759, *4 ¶4 (Miss. Ct. App. Nov. 13, 2007).

¶7. In addressing the issue of whether the trial court erred by granting summary judgment, the Court of Appeals stated, *inter alia*:

> Ordinarily, the Faulkners' belief and reliance on Connie Wilcher's implicit representation that she owned the subject property before the conveyance would qualify for the defense of laches or equitable estoppel. However, the chancellor found that the Faulkners' reliance was overcome by their duty to investigate the title to the property. Thus, the court held that neither defense applies so as to qualify the Faulkners into the category of innocent purchasers of realty. We agree. The Faulkners were charged with the duty to investigate the title to the property before purchasing the realty and the failure to ensure the property's marketability is fatal to the Faulkners' claim.
>
> "A break in the chain of title renders the title to the realty unmarketable." *Ferrara v. Walters*, 919 So. 2d 876, 883 (¶17) (Miss. 2005). Having found that the Faulkners were not innocent purchasers, we agree with the chancellor that the deed must be set aside. Viewing the evidence in the light most favorable to the party against whom the motion has been made, the Faulkners, we find that there was no genuine issue of material fact left for the court to decide.

*Faulkner*, 2007 Miss. App. LEXIS 759, **7-8, ¶¶11-12. After the Faulkners' motion for rehearing was denied by the Court of Appeals, the Faulkners filed a petition for writ of

certiorari, which this Court granted. In their petition, the Faulkners requested that this Court consider three issues: (1) whether in the absence of a will, Connie would have inherited good title to the property immediately upon Mazie's death, which she could effectively convey to any third party willing to accept it; (2) whether the Court of Appeals misapprehended this Court's opinion in *Ferrara v. Walters*, 919 So. 2d 876 (Miss. 2005), by holding that Mazie's death created a "gap" in the title which could only be cured by an adjudication of heirship or an administration of Mazie's estate; and (3) whether the Faulkners had a duty to investigate the title and are precluded from asserting the doctrines of laches and estoppel.

## DISCUSSION

¶8. In reviewing a trial court's grant or denial of summary judgment, the well-established standard of review is *de novo*. *One South, Inc. v. Hollowell*, 963 So. 2d 1156, 1160 (Miss. 2007) (citing *Hubbard v. Wansley*, 954 So. 2d 951, 956 (Miss. 2007)). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56(c). "A summary judgment motion is only properly granted when no genuine issue of material fact exists." *Jackson Clinic for Women, P.A. v. Henley*, 965 So. 2d 643, 649 (Miss. 2007) (citing *PPG Architectural Finishes, Inc. v. Lowery*, 909 So. 2d 47, 49 (Miss. 2005); *Miller v. Meeks*, 762 So. 2d 302, 304 (Miss. 2000)). "[T]he evidence must be viewed in the light most favorable to the party against whom the motion has been made."

7

*One South*, 963 So. 2d at 1160; ***Green v. Allendale Planting Co.***, 954 So. 2d 1032, 1037 (Miss. 2007) (quoting ***Price v. Purdue Pharma Co.***, 920 So. 2d 479, 483 (Miss. 2006)).

> **I.   WHETHER IN THE ABSENCE OF A WILL AND IMMEDIATELY UPON MAZIE'S DEATH, CONNIE INHERITED CLEAR TITLE TO THE PROPERTY WHICH SHE COULD EFFECTIVELY CONVEY TO ANY THIRD PARTY WILLING TO ACCEPT IT.**

¶9.     The Faulkners argue that the chancellor and the Court of Appeals erred in holding that the death of an owner of land creates a gap in the chain of title which renders it unmerchantable until there is an administration of the estate or an adjudication of heirship. They assert that in the absence of a will, title to the real estate immediately vested in Connie, as the sole heir, under the laws of descent and distribution. The Faulkners state that they had no reason to know or suspect that a will existed; and that a title examination would not have revealed any more information than they already knew. This Court has stated "[i]t would appear that there is no requirement that a suit to establish heirship must be brought at all. Such an interpretation seems reasonable when one remembers that title to the decedent's property automatically vests in his lawful heir or heirs upon his death without instituting any legal proceedings." ***McLeod v. Price***, 506 So. 2d 289, 291 (Miss. 1987). "When any person shall die seized of any estate of inheritance in lands, tenements, and hereditaments not devised, the same shall descend to his or her children, and their descendants, in equal parts. . . ." Miss. Code Ann. § 91-1-3 (Rev. 2004). Absent a will, Connie would have taken title to the property via intestate succession, and a title examination would not have revealed anything more to the Faulkners.

8

¶10.   The Faulkners also argue that they acted reasonably in relying on Connie's apparent ownership, since all they knew was that Connie was Mazie's sole heir and that no estate had been opened, nor will admitted to probate, in the twelve years since Mazie's death.  They further assert that the doctrines of laches and estoppel bar Thomas Karl from probating the will twelve years after Mazie's death and after they changed their position in reliance on the fact that Mazie died intestate.  "As a matter of public policy and at common law a person in possession of a will, after testator's death, has a duty to produce and file it with the proper parties or court."  *In re Stoball's Estate*, 211 Miss. 15, 50 So. 2d 635, 639 (1951).  In *Stoball's Estate*, Stoball's neighbor, Prather, concealed the existence of Stoball's will after his death.  When Prather later attempted to probate the will, this Court held:

> Prather's wilful concealment of the will and its terms, and his failure to record his deeds from the devisees were the causes of the change of position by Mullins in reliance on the misleading, fraudulent, and wrongful acts of Prather. Prather is estopped under these facts from probating the will, and, since Prather claims the entire interest devised under the will, the estoppel extends to any rights which might accrue under it. The elements of equitable estoppel must be considered in the light of all the peculiar circumstances of this case, and of a balancing of the equities of the respective parties.

*Id.* at 639-40.  Although our case law provides that there is no statute of limitations on probating a will, *Belt v. Adams*, 125 Miss. 387, 87 So. 666, 668 (1921), a will proponent may be estopped from procuring probate where there was fraudulent conduct or "long delay in propounding the will for probate during which property of the estate was transferred to subsequent purchasers for value and without notice of the will."  *Id.* at 640.  *See Logan v. Smith*, 229 Miss. 513, 516-517, 91 So. 2d 707 (1956) (one daughter of the testator estopped

9

to probate will where she and her siblings previously gave sworn testimony that they were heirs-at-law and no will existed).

¶11.   When considering, *inter alia*, the sworn affidavits of Hilda Denne and Alvin Roy Wright, Jr., the sworn deposition testimony of Thomas Karl, Connie, Lonnie Faulkner and Zachary Faulkner, real estate tax receipts, and the will and the deeds, all of which were submitted as part of the summary judgment proceedings, it becomes readily apparent that the chancellor erred in granting summary judgment when there were genuine issues of material fact, such as the delay in probating the will; whether Thomas Karl should be estopped to probate the will twelve years after Mazie's death; whether Connie had actual knowledge of the will and its provisions; whether the Faulkners acted reasonably in relying on Connie's apparent ownership; whether the will created a trust and/or conveyed a life estate to Connie; whether Connie had the capacity to execute a deed; whether Connie was under undue influence at the time she executed the deed; and, whether the conduct of any of the parties was fraudulent.  For all of these reasons, we find this issue to have merit.

**II.     WHETHER THE COURT OF APPEALS MISAPPREHENDED THIS COURT'S OPINION IN *FERRARA V. WALTERS*, 919 So. 2d 876 (Miss. 2005) BY HOLDING THAT MAZIE'S DEATH CREATED A "GAP" IN THE TITLE WHICH COULD ONLY BE CURED BY AN ADJUDICATION OF HEIRSHIP OR AN ADMINISTRATION OF MAZIE'S ESTATE.**

¶12.   The Court of Appeals did not discuss, nor in reality, apply **Ferrara v. Walters** to the case *sub judice*.  The Court of Appeals simply provided a one-sentence explanation for the proposition that "[a] break in the chain of title renders the title to the realty unmarketable."

10

*Faulkner*, 2007 Miss. App. LEXIS 759, *8, ¶12; *Ferrara*, 919 So. 2d at 883. *Ferrara* actually supports the principle that title vests immediately in the heirs upon the owner's death and in the absence of a will. *Ferrara*, 919 So. 2d at 882-883. The case involved a contract for conveyance of real property in which the sellers had taken title via quit-claim deed from the heirs of a deceased owner. *Id.* Pursuant to the provisions of this contract, the seller was required to cure a perceived defect in the title prior to the consummation of the real estate transaction. This perceived defect in title was created by a deed which was devoid of language as to the type of estate created (i.e., tenancy by the entirety, joint tenancy, or tenancy in common), thus creating by law a presumption that a tenancy in common had been created as between husband and wife. There had not been an adjudication of heirship, so the buyer's attorney advised that the title was defective. *Id.* In the breach-of-contract lawsuit and appeal that followed, this Court determined that the property was subject to claims brought by any heirs-at-law of the deceased previous owner. *Id.*

¶13.    This Court stated that "as tenants in common, when Mr. Strong died intestate, his one-half undivided interest vested in his heirs at law, and Mrs. Strong maintained a one-half undivided interest plus whatever fractional interest she may have received as an heir of Mr. Strong." *Id*. In *Ferrara*, this Court was addressing the proposition that "[w]hen the seller agrees to convey property by warranty deed, he warrants that the title conveyed is without defect, i.e., clear and marketable." *Id.* at 883. Thomas Karl and Connie seize upon a footnote in *Ferrara* for the proposition that any perceived break in the chain of title results in the property being unmarketable and that marketability can be created only by finally

11

adjudicating the rightful heirship to property by either opening an estate or filing a petition to establish heirship. *Id.* This reliance upon *Ferrara* by Thomas Karl and Connie for such a proposition is misplaced. A buyer may choose to take title subject to any defect, and therefore, title is marketable if the purchaser is willing to accept it without further proof of heirship. We thus find this issue to have merit inasmuch as the Court of Appeals, as well as the chancellor, erred in finding that the title to the subject real estate was unmarketable due to a break in the chain of title.

### III. WHETHER THE FAULKNERS HAD A DUTY TO INVESTIGATE THE TITLE AND ARE PRECLUDED FROM ASSERTING THE DOCTRINES OF LACHES AND ESTOPPEL.

¶14. As already noted, in today's case, a title investigation would not have revealed any further information to the Faulkners. Other than a disclosure by Thomas Karl or Connie, there was absolutely nothing to indicate that a will existed. Stated differently, as noted by the Faulkners, through counsel, in the record before us:

> First, a title examination would have revealed that Mazie Wilcher was the owner of the property, that no administration of her estate had been opened and that no petition to determine her heirship had been filed. Second, an investigation of her death and heirship would have determined that Mazie Wilcher had in fact died, that her husband had predeceased her and that Connie Wilcher was her daughter, only child, and sole heir at law all of which the [Faulkners] already knew and neither a petition to determine her heirship nor an administration of her estate would have produced a different result. The only way for these facts to be altered would be if [Thomas Karl and Connie], who knew that a will existed, had come forward and either produced the will or a[t] least disclosed this very material fact instead of waiting more than twelve years and then probating the will after the [Faulkners] purchased the land in good faith reliance on the facts and circumstances as they existed due to the silence and inaction of [Thomas Karl and Connie].

12

As previously stated, the elements of equitable estoppel must be considered where there is fraud, undue delay, or willful concealment. ***In re Stoball's Estate***, 50 So. 2d at 639-640. We likewise find this issue to have merit since there was a genuine issue of material fact for the trial court to determine as to the applicability of the doctrine of equitable estoppel.

## CONCLUSION

¶15.    For the reasons stated, the judgments of the Court of Appeals and the chancery court are reversed and this case is remanded to the Chancery Court of Leake County for further proceedings consistent with this opinion.

¶16.    **REVERSED AND REMANDED.**

**SMITH, C.J., WALLER AND DIAZ, P.JJ., GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR.  EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.  LAMAR, J., NOT PARTICIPATING.**